| Fill in this information to identify the case: |
| --- |
| United States Bankruptcy Court for the:<br>Southern District of New York<br>Case number *(If known):* 17-_____ Chapter 15 |

☐ Check if this is an amended filing

## Official Form 401

# Chapter 15 Petition for Recognition of a Foreign Proceeding    12/15

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write debtor's name and case number (if known).

**1. Debtor's name**

Oi Brasil Holdings Coöperatief U.A.

**2. Debtor's unique identifier**

**For non-individual debtors:**

☐ Federal Employer Identification Number (EIN)  ___ ___ – ___ ___ ___ ___ ___ ___ ___

☑ Other 52578518 (Netherlands)  . Describe identifier _____ .

**For individual debtors:**

☐ Social Security number:  xxx – xx– ____ ____ ____ ____

☐ Individual Taxpayer Identification number (ITIN):  **9** xx – xx – ____ ____ ____ ____

☐ Other _____ . Describe identifier _____ .

**3. Name of foreign representative(s)**

Jasper R. Berkenbosch

**4. Foreign proceeding in which appointment of the foreign representative(s) occurred**

Bankruptcy Proceeding, Case No. F.13/17/163, District Court of Amsterdam

**5. Nature of the foreign proceeding**

*Check one:*

☑ Foreign main proceeding
☐ Foreign nonmain proceeding
☐ Foreign main proceeding, or in the alternative foreign nonmain proceeding

**6. Evidence of the foreign proceeding**

☑ A certified copy, translated into English, of the decision commencing the foreign proceeding and appointing the foreign representative is attached.

☐ A certificate, translated into English, from the foreign court, affirming the existence of the foreign proceeding and of the appointment of the foreign representative, is attached.

☐ Other evidence of the existence of the foreign proceeding and of the appointment of the foreign representative is described below, and relevant documentation, translated into English, is attached.

_____
_____

**7. Is this the only foreign proceeding with respect to the debtor known to the foreign representative(s)?**

☑ No. (Attach a statement identifying each country in which a foreign proceeding by, regarding, or against the debtor is pending.)

☐ Yes

*Refer to the attached Statement Pursuant to 11 U.S.C. § 1515(c) Identifying Foreign Proceedings*

| Debtor | Oi Brasil Holdings Coöperatief U.A. | Case number *(if known)* 17- |
|---|---|---|
| | Name | |

---

**8.  Others entitled to notice**

*Refer to the attached Corporate Ownership Statement and Related Disclosures Pursuant to Fed. R. Bankr. P. 1007(a)(4) and 7007.1*

Attach a list containing the names and addresses of:

(i)   all persons or bodies authorized to administer foreign proceedings of the debtor,

(ii)  all parties to litigation pending in the United States in which the debtor is a party at the time of filing of this petition, and

(iii) all entities against whom provisional relief is being sought under § 1519 of the Bankruptcy Code.

---

**9.  Addresses**

**Country where the debtor has the center of its main interests:**

The Netherlands

**Debtor's registered office:**

Strawinskylaan 3127
Number        Street

_____
P.O. Box

Amsterdam 1077 ZX
City        State/Province/Region        ZIP/Postal Code

The Netherlands
Country

**Individual debtor's habitual residence:**

_____
Number        Street

_____
P.O. Box

_____
City        State/Province/Region        ZIP/Postal Code

_____
Country

**Address of foreign representative(s):**

JONES DAY Concertgebouwplein 20
Number        Street

PO Box 51204
P.O. Box

Amsterdam 1007 EE
City        State/Province/Region        ZIP/Postal Code

The Netherlands
Country

---

**10.  Debtor's website** (URL)        http://oibrasilholdingscoop-administration.com/

---

**11.  Type of debtor**

*Refer to the attached Corporate Ownership Statement and Related Disclosures Pursuant to Fed. R. Bankr. P. 1007(a)(4) and 7007.1*

*Check one:*

❏  Non-individual (*check one*):

    ☑  Corporation.  Attach a corporate ownership statement containing the information described in Fed. R. Bankr. P. 7007.1.

    ❏  Partnership

    ❏  Other.  Specify: _____

❏  Individual

---

| Debtor | Oi Brasil Holdings Coöperatief U.A. | Case number (if known) 17- |
|---|---|---|
| | Name | |

**12. Why is venue proper in *this district*?**

Check one:

☑ Debtor's principal place of business or principal assets in the United States are in this district.

☐ Debtor does not have a place of business or assets in the United States, but the following action or proceeding in a federal or state court is pending against the debtor in this district:

_____

☐ If neither box is checked, venue is consistent with the interests of justice and the convenience of the parties, having regard to the relief sought by the foreign representative, because:

_____

**13. Signature of foreign representative(s)**

I request relief in accordance with chapter 15 of title 11, United States Code.

I am the foreign representative of a debtor in a foreign proceeding, the debtor is eligible for the relief sought in this petition, and I am authorized to file this petition.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

✗ _____           Jasper R. Berkenbosch
Signature of foreign representative                Printed name

Executed on    07/07/2017
MM / DD / YYYY

✗ _____           _____
Signature of foreign representative                Printed name

Executed on _____
MM / DD / YYYY

**14. Signature of attorney**

✗ _____    Date    07/07/2017
Signature of Attorney for foreign representative          MM / DD / YYYY

Corinne Ball
Printed name
JONES DAY
Firm name
250 Vesey Street
Number       Street
New York                                    NY        10281
City                                        State     ZIP Code

(212) 326-3939                              cball@jonesday.com
Contact phone                               Email address

1125186                                     NY
Bar number                                  State

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
In re:                                          :
                                                :   Chapter 15
Oi Brasil Holdings Coöperatief U.A.,            :
                                                :   Case No. [_____] (SHL)
            Debtor in a Foreign Proceeding.     :
                                                :
-------------------------------------------------------------x
```

### STATEMENT OF RELATEDNESS

This chapter 15 proceeding is related to the existing chapter 15 proceedings of Oi S.A., Telemar Norte Leste S.A., Oi Brasil Holdings Coöperatief U.A. and Oi Móvel S.A., jointly administered under Case No. 16-11791, currently pending before Judge Sean H. Lane of the Bankruptcy Court of the Southern District of New York. As such, we respectfully request that this chapter 15 proceeding be assigned to Judge Lane.

**Certified Copy, Translated into English,**
**of the Decision of the Amsterdam Court of Appeals Commencing the**
**<u>Dutch Bankruptcy Proceeding for Coop and Appointing the Insolvency Trustee</u>**



Ondergetekende, S.R. Gärtner, beëdigd als vertaler voor de Engelse taal voor de Rechtbank in Den Haag en ingeschreven in het Register beëdigde tolken en vertalers onder nummer 3159, verklaart hierbij dat de bijgevoegde Engelse vertaling een nauwgezette weergave is van de eveneens bijgevoegde Nederlandse brontekst.

Leiden, 7 mei 2017

The undersigned, S.R. Gärtner, sworn as a translator for the English language before the District Court of The Hague, the Netherlands, and listed in the Dutch Register of Sworn Interpreters and Translators under number 3159, hereby certifies that the attached English translation is a faithful and accurate reflection of the Dutch source text attached to the translation.

Leiden, 7 May 2017

*Simone Gartner*

S.R. Gärtner
Wbtv number 3159



decision                              TRUE COPY

---

**AMSTERDAM COURT OF APPEAL**

civil law and tax law division

case number                                            : 200.209.207/01
suspension of payments number District Court of Amsterdam    : C/l3/16/41 S

**decision of the three-judge civil chamber of 19 April 2017**

in the matter of:

1.     **CITADEL EQUITY FUND LTD.,**
with registered office in Grand Cayman (Cayman Islands),
2.     **SYZYGY CAPITAL MANAGEMENT LTD. (AURELIUS),**
with registered office in New York (United States of America),
3.     **TRINITY INVESTMENTS DESIGNATED ACTIVITY COMPANY,**
with registered office in Dublin (Ireland),
4.     **YORK GLOBAL FINANCE FUND L.P.,**
with registered office in London (United Kingdom),
appellants,
attorneys: *mr.* F. Verhoeven, *mr.* G.H. Gispen and *mr.* D.G.J. Heems of Amsterdam,

versus

**OI BRASIL HOLDINGS COÖPERATIEF U.A.,**
with registered office in Amsterdam,
respondent,
attorneys: *mr.* L.P. Kortmann and *mr.* V.G.M. Leferink of Amsterdam.

## 1. The appellate proceedings

The appellants are hereinafter collectively referred to as: "Citadel et al." and the respondent as "Oi Coop".

Citadel et al. filed appeal by a notice of appeal received by the registry of the Amsterdam Court of Appeal on 10 February 2017 against the judgment of the District Court of Amsterdam of 2 February 2017 with the abovementioned suspension of payments number, in which the application seeking the retraction of the provisionally granted suspension of payments and the concurrent pronouncement of the bankruptcy of Oi Coop is denied.

The appeal was heard at the hearing of the Court of Appeal of 29 March 2017. At that hearing *mr.* Verhoeven, *mr.* Gispen and *mr.* Heems, aforementioned, as well as *mr.* H.M.E. van Baren, an attorney in Amsterdam, appeared on behalf of Citadel et al. Attorneys *mr.* Gispen and *mr.* Verhoeven further explained the notice of appeal with the aid of a memorandum of oral pleading that was submitted to the Court of Appeal. Attorneys *mr.* Kortmann and *mr.* Leferink, aforementioned, as well as A. Ourhris, an attorney in Amsterdam, appeared on behalf of Oi Coop. Kortmann further explained the statement of defence referred to below with the aid of a memorandum of oral pleading that was submitted to the Court of Appeal. The administrator *mr.* J.R. Berkenbosch also appeared, accompanied by his associates *mr.* E.J. Schuurs and *mr.* Y.S. Beerepoot, attorneys in Amsterdam, who explained his position with reference to speaking notes that were submitted to the Court of Appeal.

Additionally, *mr.* R.D. Vriesendorp, *mr.* R. van den Sigtenhorst and *mr.* K.M. Sixma, attorneys in
Amsterdam, appeared on behalf of Portugal Telecom International Finance B.V. (hereinafter: "PTIF"),
in its capacity of creditor of Oi Coop. Attorney *mr.* Van den Sigtenhorst further explained the position
of PTIF with reference to speaking notes that were submitted to the Court of Appeal. In addition,
*mr.* M.H.R.N.Y. Cordewener, an attorney in Amsterdam, appeared on behalf of The Bank of New York
Mellon (hereinafter: "BNYM"), acting for the benefit of the 2022 and 2021 beneficial noteholders.
Attorneys *mr.* Verhoeven and *mr.* Gispen, aforementioned, also appeared on behalf of Monarch Master
Funding 2 (Luxembourg) S.à.r.l. (hereinafter: "Monarch") as holder of notes issued by Oi Coop. Lastly
appeared, the administrator of PTIF, *mr.* J.L.M. Groenewegen, accompanied by his associate
*mr.* D.J. Bos, an attorney in Amsterdam.

The Court of Appeal has taken cognizance of:
- the notice of appeal, with annex (exhibit 25);
- the documents from the proceedings in first instance, including the official record of the
  hearing of 12 January 2017;
- the letter from the administrator of 16 March 2017, with annexes (annexes 1 through 3);
- the letter from the administrator of PTIF of 20 March 2017;
- the statement of defence of Oi Coop of 22 March 2017, met annexes (numbered 1 through 21c);
- the administrator's point of view of 23 March 2017, with annexes (exhibits 1 through 6);
- letters from Oi Coop of 20 March and 24 March 2017;
- letters from Citadel et al. of 21 March, 22 March and 24 March 2017;
- further documents of Citadel et al. (exhibits 26 through 33) submitted by letter of 27 March
  2017;
- further documents of Oi Coop (annexes 22 through 24) submitted by letter of 28 March 2017.

The attorneys declared to have taken due note of the aforementioned documents.


## 2. The oral hearing in appeal

2.1.     The Court of Appeal decided in advance of the hearing on the applications made by the parties
as set out in the letters from the administrator (16 March 2017), from Oi Coop (20 March 2017) and
from Citadel et al. (22 March 2017) regarding the public nature of the hearing. These decisions were
communicated to those involved by e-mail of 23 March 2017 and by letter of 24 March 2017, which
read as follows. By analogy with article 220 of the Dutch Bankruptcy Act (*Faillissementswet*, "Fw")
the present appeal will be heard in camera. Those who can demonstrate that they are creditors may
attend the hearing in appeal. The administrator of PTIF may also attend. Lastly, the Court of Appeal
directed on the basis of article 29 of the Dutch Code of Civil Procedure (DCCP) (*Wetboek van
Burgerlijke Rechtsvordering*) that it is forbidden to make disclosures to third parties with respect to the
proceedings in camera and the contents of the procedural documents. Though Oi Coop has requested
this, there is no reason to reconsider this decision.



2.2.     Taking into account the provisions above, the Court of Appeal requested N. Wendling, employed at G5 Evercore and financial adviser of Citadel et al., to leave the hearing, as he was not a creditor of Oi Coop. He complied with that request. Documents have been submitted (as evidence or otherwise) on behalf of PTIF, BNYM and Monarch, sufficiently demonstrating in which capacity they have appeared in chamber and that they each have an interest in being present. Given this, the Court of Appeal directed that PTIF, BNYM and Monarch may be present during the hearing in chamber.

## 3.  The established facts

3.1.     On 9 August 2016, Oi Coop submitted a petition for a (provisional) suspension of payments to the District Court of Amsterdam. A draft composition plan was attached to the application. In a court order of 9 August 2016, the District Court granted Oi Coop a provisional suspension of payments, thereby appointing the aforementioned *mr.* Berkenbosch as administrator and *mr.* W.F. Korthals Altes as supervisory judge. In this context, the District Court also ordered that the hearing referred to in Article 218 Bankruptcy Act (meeting of creditors) would not take place and that the consultation and voting on the offered composition plan would take place in the presence of the supervisory judge on 18 May 2017 at 10:00 hours.

3.2.     Oi Coop was established on 20 April 2011 and is part of a group of companies (hereinafter: the "Oi Group"). The Oi Group is one of the largest integrated service providers in the telecommunications industry in the world. The sole member of Oi Coop is Oi S.A., the parent company of the Oi Group. The shares in Oi S.A. are traded on the stock exchange of São Paulo and on the New York Stock Exchange. A large part of the financing of the Oi Group takes place through its two Dutch finance companies: Oi Coop and PTIF. PTIF was granted a provisional suspension of payments on 3 October 2016 with the aforementioned *mr.* Groenewegen appointed as administrator and *mr.* M.J.E. Geradts appointed as the supervisory judge.

3.3.     The operational activities of the Oi Group take place primarily in Brazil, but the Oi Group is or has also been active in Portugal and various African countries. In Brazil, the telecom activities are regulated by the Brazilian Agência National de Telecomunicações (hereinafter: "ANATEL").

3.4.     The activities of Oi Coop include (i) attracting monies from the international capital markets, primarily by issuing notes (bonds), (ii) receiving funds from PTIF via a credit agreement which Oi Coop and PTIF concluded on 2 June 2015 and which has been revised from time to time (hereinafter: the "PTIF loan") and (iii) the on-lending of funds that Oi Coop has raised by means of the notes or has received from PTIF (by means of the PTIF loan), to members of the Oi Group. The notes are guaranteed by Oi S.A. Oi Coop does not itself have any operating activities and the noteholders can only be paid from the revenue and proceeds generated by the operating companies of the Oi Group. Under the guarantee of Oi S.A., the noteholders also have a direct claim on Oi S.A.

3.5.     Oi Coop is issued two series of notes, as at 20 June 2016 for a total of €1.9 billion. Under the PTIF loan, it owes PTIF approximately €3.8 billion. Oi Coop lent approximately €4 billion to Oi S.A. in the period from June 2015 to March 2016 and approximately €1.6 billion to Oi Móvel S.A. (hereinafter: "Oi Móvel") in March 2016 (hereinafter referred to jointly as: the "Coop transactions").



3.6.    On 20 June 2016, Oi Coop, together with Oi S.A. and five other group companies, namely PTIF, Oi Móvel, Telemar Norte Leste S.A., Copart 4 Participações and Copart 5 Participaões S.A. (hereinafter referred to jointly as: the "RJ creditors"), submitted a petition for opening consolidated judicial restructuring proceedings in Brazil (*recuperação judicial*, hereinafter: the "RJ Proceedings"). The Brazilian Court granted this request on 29 June 2016. The purpose of the RJ Proceedings is to restructure the Oi Group as a going concern by means of a composition plan (hereinafter: the "RJ Plan") negotiated with the creditors and approved by the creditors and the Court to avoid liquidation. On 5 September 2016, a consolidated (draft) RJ Plan was filed with the Court in Rio de Janeiro, Brazil. Oi S.A. announced by press release of 22 March 2017 that the (draft) RJ Plan would be amended. The changes were shown in the annex to that press release. It follows from the original (draft) RJ Plan and the amended (draft) RJ Plan that Oi Coop will not receive distributions on its claims on Oi S.A. or Oi Móvel on the basis of the Oi Coop transactions. The chairman of the board of Oi S.A. stated the following in this respect: "This is the proposal we'll send to the judge and put to a vote."

3.7.    By letter of 2 March 2017, the administrator of Oi Coop wrote the following to the board of Oi Coop, insofar as is relevant:

*" (...)*
*1.2    The Court has instructed us (directors and administrator) to discuss the possibilities for further cooperation, in pursuit of a Dutch composition plan that is acceptable to the Coop creditors (see the Decision at 8.20 Decision). During our video conference on 7 March 2017 we will discuss those possibilities for further cooperation, including preparations for the creditors' meeting on 18 May 2017 and the working mode to be adopted.*
*1.3 The present letter raises a number of fundamental questions based on the Decision. My aim is to achieve clarity on what intentions Coop and Oi S.A. ("Oi") have, and whether they are indeed willing to address the issues in a new amended RJ Plan.*
*(...)*
*3. QUESTIONS*
*3.1 (...) I have various questions, which are set out below. Please respond as soon as possible, and at the latest by 10 March 2017 COB. The Financial Information (question 5) and the new and amended RJ Plan (question 1) at the latest by 22 March 2017 COB.*
*(...)*
*3.5 Question 1.—Amended RJ Plan*
*(i) When will an amended RJ Plan be presented that can be considered an offer rather than a draft placeholder plan only?*
*(...)*
*3.6 Question 2. - Intercompany Claims*
*(i) What recovery is (or will be) offered to Coop for the Intercompany Claims under the (new amended) RJ Plan?*
*(...)*
*(ii) If no recovery is offered to Coop, what equivalent compensation is (or will be) offered to Coop's creditors for the renunciation of the right of recovery on the Intercompany Claims?*
*3.7 Question 3. - Guarantee Claims*
*(i) What recovery, if any, is (or will be) offered to Coop's creditors under the (new amended) RJ Plan for the Guarantee Claims?*



*(...)*
*(ii) Why do Coop's creditors receive the same payment for two claims as other Class III creditors of the RJ Debtors receive for one claim?*

*3.8 Question 4. - Bankruptcy scenario/Secondary Claims*
*(i) What recovery is (or will be) offered to Coop's creditors under the (new amended) RJ Plan for the Secondary Claims (...)?*
*(...)*

*3.9 Question 5. - Financial Information*
*(i) Please confirm that you are willing to provide the Financial Information (including segregated creditors' lists) by COB on 22 March 2007 at the latest.*
*Once I receive your confirmation, I will provide you with further questions regarding the financial information that I need in order to perform my tasks as administrator (...)*
*(ii) Please confirm that you (RJ Debtors) are willing to support and finance that I retain a financial expert.*

*3.10 Question 6. - Withdrawal of the filing of 28 November 2016*
*(i) Please confirm that you will immediately withdraw the filing of 28 November 2016.*
*(...)*

*3.11    Question 7. - Consolidation*
*(i) Why is substantive consolidation of the assets and liabilities of the RJ Debtors in the best interests of Coop's creditors, compared with an unconsolidated restructuring?*
*You represented this in the writ of defence, and the Court took it into consideration. I presume that you can support this sweeping statement by presenting expert opinions; if so, kindly share these opinions with me. According to the calculations presented to me by creditor groups, unconsolidated restructuring could substantially increase the recovery for Coop's creditors (45.80% via Coop plus 18% on Guarantee Claims instead of a total of approximately 30% under current RJ Plan). In your answer, please include what percentage Coop's creditors would receive if the RJ Plan did not provide for substantive consolidation.*

*3.12 Question 8. - Tax implications*
*(i) Why does substantive consolidation provide for an optimal tax structure in the restructuring?*
*(ii) Why does bankruptcy of Coop have negative tax implications for Coop's creditors?*
*(iii) Why would a distribution on the Intercompany Claims trigger negative tax implications?*
*(...)*

*3.13 Question 9. - Respect the vote in the Netherlands*
*(1) Please confirm that you will not withdraw the suspension of payment proceedings and that you will respect and act in accordance with the outcome of the vote by Coop's creditors in the Dutch proceedings. (...) "*

3.8.     By letter of 15 March 2017, the board of Oi Coop responded to the administrator as follows, insofar as is relevant:
*"(...) As discussed during the recent video conference, we would like to propose to address your questions during our future scheduled conferences, as the restructuring process further develops and the required information becomes available (some of your information requests can simply not be complied with at this stage of the restructuring process, which is not uncommon in multi-jurisdictional restructurings). (...) "*



### 4. The assessment

4.1.    Aside from Citadel et al., the administrator of Oi Coop has also requested the District Court to withdraw the provisionally granted suspension of payments and to pronounce Oi Coop bankrupt at the same time. In the same appealed decision, the District Court dismissed the administrator's application and, in summary, held that it had neither been contended nor had it become apparent that the creditors would be better off were the suspension of payments to be withdrawn and Oi Coop to be declared bankrupt and that none of the grounds for withdrawal of the suspension of payments (under Article 242 paragraph 1 Fw) existed. Lastly, the District Court suggested that the parties enter into consultations with each other in order, once again, to align their mutual expectations and to enable the administrator to perform his duties satisfactorily. The application of Citadel et al. was also dismissed given that the District Court found that this request contained no grounds other than those of the administrator. It is against this decision and the grounds underpinning it that Citadel et al. have directed their grievances.

4.2.    The primary grievance of Citadel et al. contends that the contested decision lacks sufficient substantiation insofar as this concerns their action against Oi Coop. This grievance fails. In its decision, the District Court held that Citadel et al. had put forward no grounds other than those which the administrator had used to underpin his application and that "likewise" their application could not lead to the withdrawal of the provisionally granted suspension of payments. As the Court of Appeal understands this, in making this finding the District Court meant that the reasons it gave for its dismissal of the grounds put forward by the administrator likewise held for the identical grounds that Citadel et al. had put forward. That, as they claim, Citadel et al. "had never seen" the administrator's application does not change this.

4.3.    Citadel et al. then proceeded to raise as a grievance that the District Court had erred in linking the ground for withdrawal that the debtor was attempting to prejudice its creditors (Article 242 paragraph 1 subsection 2 Fw) to the precondition that this had to take place in the course of the suspension of payments. However, this time clause is only set out in Article 242 paragraph 1 subsection 1 Fw. As the administrator has established that Oi Coop together with Oi S.A. and Oi Móvel seriously prejudiced its creditors in the year preceding the suspension of payments, the ground for withdrawal under Article 242 paragraph 1 subsection 2 has been satisfied, so Citadel et al. claim.

4.4.    The Court of Appeal finds as follows. Article 218 paragraph 4 Fw provides that a suspension of payments may never be granted definitively where there is a well-founded fear that the debtor will attempt to prejudice the creditors during the suspension of payments. Article 242 paragraph 1 subsection 1 Fw provides that the suspension of payments may be withdrawn by the district court where, in the course of the suspension of payments, the debtor has engaged in bad faith management or the estate. Given the time clauses set out therein, these two provisions refer to impermissible acts or omissions on the part of the debtor during the suspension of payments. However, no such time clause is to be found in Article 242 paragraph 1 subsection 2 Fw: the suspension of payments may be withdrawn where the debtor seeks to prejudice its creditors. This suggests that this time clause does not apply to this ground for withdrawal. In addition, a situation in which a debtor might seek to prejudice his creditors during the suspension of payments would at any rate fall under his bad faith management within the meaning of Article 242 paragraph 1 subsection 1 Fw. This means that the situation referred to at subsection 2 would not enjoy any independent significance if the District Court's interpretation is followed, which is an interpretation not intended by the legislator. Nor is it reasonable to suppose that the legislator had wished to make it impossible for the suspension of payments to be terminated where the administrator, in the course of his activities, discovers acts or omissions on the part of the debtor prior to the suspension of payments that lead to the creditors being prejudiced. In such a case the debtor does not in principle "deserve" any suspension of his payments to his creditors.



4.5.     In this context, the following is pertinent. It is common ground between the parties that in the period from June 2015 to March 2016 Oi Coop lent €5.6 billion to Oi S.A. and Oi Móvel, of which €1.6 billion to Oi Móvel several days before it was announced on 9 March 2016 that a financial adviser had been appointed with a view to a restructuring of the debts of the Oi Group. An abstract from the business register concerning Oi Coop dated 22 December 2016 (exhibit 1 to the application of Citadel et al.) shows that A.J. Lavatori Correa has been a director of Oi Coop since 3 March 2016. Given his business e-mail address (lavatori@oi.net.br), it is sufficiently likely that he is an employee of one of the members of the Oi Group, or, failing that, that he occupies a position there. At 7.3 of the second public report of the administrator dated 3 March 2017 it is stated that the €1.6 billion loan made to Oi Móvel was extended after the change in the board of 3 March 2016, a point that Oi Coop has not gainsaid.

The administrator has qualified the above-referenced loans as fraudulent in respect of creditors; or, failing that, as unlawful. Aside from the question of whether all the loans satisfy these qualifications (or only one of them), the €1.6 billion loan is in any case highly suspicious if only in the light of the fact that Oi Coop, as the financing vehicle within the Oi Group, is also obliged to take into account the need to promote the enduring success of the business of the Oi Group. This loan was extended shortly before the announcement of the restructuring of the debts of the Oi Group. In this context, Oi Coop's position as the financing vehicle within the Oi Group and the *de facto* involvement of the Oi Group in Oi Coop when this loan was extended, given that one of its employees was at the time a newly appointed director of Oi Coop, are also pertinent. On the basis of these facts and circumstances, examined in relation to each other, the Court of Appeal deems it likely that Oi Coop's board had knowledge of the financial problems of the Oi Group when it extended the €1.6 billion loan to Oi Móvel. It is also noted that Oi Coop has not denied having had that knowledge.

Given that, in principle, a restructuring of debts means that creditors are no longer repaid in full or, in any case, not on time, and that Oi Coop knew or should reasonably have known that Oi Móvel or, as the case may be, Oi S.A. would be unable to comply with its repayment obligations, or not within a reasonable term, in respect of Oi Coop or with its guarantee obligations in respect of the noteholders, it is sufficiently plausible that a prejudicial act within the meaning of Article 242 paragraph 2 subsection 2 Fw was committed. This is based in part on the fact that according to the proposed (draft) RJ Plan and the amended (draft) RJ Plan, Oi Coop has consented to the consolidated restructuring of the debts of the Oi Group in which context no distribution will in respect of its claims on Oi S.A. and Oi Móvel on the ground of the Oi Coop transactions, a matter that, given its damaging character, scarcely appears logical in any case for the €1.6 billion loan to Oi Móvel.

4.6.     In addition, this ranks as an act of management or disposition on the part of Oi Coop in respect of an asset that is part of the estate: it having made a proposal to waive its claims on Oi S.A. and Oi Móvel, for which, pursuant to Article 228 paragraph 1 Fw, the administrator's consent was required whereas Oi Coop did not seek that consent. This satisfies the grounds for withdrawal pursuant to Article 242 paragraph 1 subsection 3 Fw.

4.7.     Citadel et al. pursue their grievances when they contend, in summary, that as from day one until the end of his appointment the administrator must have at his disposal the same information as Oi Coop (or its board) "in order to secure management of the debtor's affairs in collaboration with the debtor" (Article 215 paragraph 2 Fw), although Oi Coop (or its board) refuses to share this information with the administrator.



4.8.      In this connection, the administrator's point of view, which he sent the Court of Appeal for the purposes of the appeal hearing and which he explained in further detail the hearing, is of importance. That point of view is not, as Oi Coop argued at the hearing, an unacceptable disguised appeal notwithstanding the fact that the administrator has not filed an appeal. Pursuant to Article 242 paragraph 3 Fw, the administrator is in any event to be heard in order to make his point of view known.

4.9.      The administrator noted that in a press release of 22 March 2017 (see at 3.6 above) the Oi Group stated that amended version of the RJ Plan (in draft form) would be filed in the near future. An appendix attached to the press release provided details of the changes. According to the administrator, it could be deduced from these details that even in the amended plan (i) no compensation was to be accorded to Oi Coop for its intercompany claims on the grounds of the Oi Coop transactions, (ii) no account was taken of the Oi Coop transactions, which the administrator has deemed to be fraudulent in respect of creditors and unlawful, and  (iii) no account was taken of the fact that in addition to their claims on Oi Coop the noteholders also have claims on Oi S.A. arising from the guarantee it had extended. The administrator furthermore noted that this amended plan had been submitted in, in part, Oi Coop's name but that this had not been discussed with him.

4.10.      In the light of the foregoing, the administrator is of the opinion that since the hearing of the application for withdrawal before the District Court in the first instance and despite the District Court's recommendation in the contested decision to cooperate with him (i) Oi Coop (or its board) continues to refuse to supply him with the information he needs to fulfil his duties properly, (ii) Oi Coop (or its board) has not involved him in important acts conducted in Oi Coop's name, such as amending the RJ Plan (in draft form), which have direct consequences for Oi Coop's assets. A further point of note is that while the Oi Group may claim that negotiations are proceeding positively with the creditors, a large group of creditors of the Oi Group (who in aggregate represent claims amounting to some $4 billion) have stated that the Oi Group has not been negotiating with them at all.

4.11.      The administrator concludes that it has become apparent from the course of affairs following the contested decision that Oi Coop (or its board) and the Oi Group will not change their policy of excluding him. With the announcement of the amendments to the RJ Plan (in draft form) it has become clear that Oi Coop and the Oi Group will pay no heed to Oi Coop's exceptional position; nor to the creditors of Oi Coop as a consequence of the intercompany claims; nor to the guarantee claims on Oi S.A.; nor to the Oi Coop transactions. For this reason, the administrator deems it to be in the interest of Oi Coop's creditors that an (independent) bankruptcy trustee be appointed who can safeguard their interests and, for as long as this remains possible, may exercise influence in that respect on the RJ proceedings in Brazil.

4.12.      The Court of Appeal notes that it follows from the correspondence between the administrator and Oi Coop's board that is reproduced at 3.7 and 3.8 above that Oi Coop is not prepared to answer the administrator's questions which the Court of Appeal considers are relevant to this matter given that his duty is to pursue the management of its affairs together with Oi Coop's board (Article 215 paragraph 2 Fw) and to report on the composition plan proposed at the meeting (Article 265 paragraph 1 Fw). While it may be the case that the RJ proceedings are a complicated process and that the results cannot be precisely predicted if they can be predicted at all, the answer given by Oi Coop's board (see at 3.8 above) does not bear witness to any real willingness to enter into genuine and worthwhile consultations with the administrator about the financial implications the RJ Plan (in draft form) will have for the estate.



This unwillingness also follows from the fact, which has not been denied, that the amended RJ Plan (in draft form) has in part been filed in Oi Coop's name but has not been discussed with the administrator. Lastly, the response from Oi Coop's board only to respond to questions "as the restructuring process further develops and the required information becomes available" is a testament to a passive, wait-and-see approach on the part of Oi Coop's board that quietly submits to the financial implications of the imminent RJ Plan without, as may be expected of a board, examining the consequences of the envisaged RJ Plan in collaboration with the administrator in the interest of the estate and without actively collecting the information necessary for this and sharing it with the administrator.

4.13.    The Court of Appeal recognises that as the finance company of the Oi Group, Oi Coop wishes to align its conduct with the legitimate interests of the group of which it is part but this cannot diminish the point that it may not lose sight of the interests of its own creditors. It is inconsistent with this principle for Oi Coop (or its board) not to provide the administrator with information or to provide him with insufficient information, as a consequence of which the administrator is insufficiently informed about the Brazilian composition negotiations and as a result is unable to determine whether acceptance of the consolidated restructuring of the debts in the context of the RJ proceedings is in the estate's interest. This means that the acts and conduct on the part of Oi Coop (or of its board) described at 4.11 above that are at odds with the District Court's recommendation constitute a ground for withdrawing the suspension of payments pursuant to Article 242 paragraph 1 subsection 4 Fw.

4.14.    It follows from the foregoing that the grounds for withdrawal set out in subsections 2, 3 and 4 of Article 242 paragraph 1 Fw are satisfied. In summary, Oi Coop put forward the following arguments in support of the non-withdrawal of the suspension of payments and in support of not pronouncing bankruptcy. The bankruptcy of Oi Coop offers the creditors no advantages (no higher compensation, the creditors may already participate in the RJ proceedings) and only has disadvantages (disrupting the RJ proceedings, the bankruptcy of Oi Coop might possibly have negative fiscal consequences).

The Court of Appeal's weighing of the interests concerned leads to the withdrawal of the suspension of payments and pronouncement of bankruptcy. Given the amended RJ plan (in draft form), in respect of which the CEO of Oi S.A. has stated *"This is the proposal we'll send to the judge and put to a vote"*, it is now, contrary to the position at the time of the contested decision (see at 8.7 thereof), sufficiently plausible that no distribution will be made on Oi Coop's claims on Oi S.A. and Oi Móvel. In addition, the recommendation made by the District Court to Oi Coop to collaborate with the administrator and to provide him with the information he requires in order to perform his duties properly (see at 8.20) has not, as the foregoing shows, led to the desired result. The Court of Appeal is unable to follow the arguments put forward by Oi Coop in this context. In the absence of any further explanation, which is lacking, it cannot be stated in advance that a bankruptcy trustee (of Oi Coop and of Oi S.A., the surety) to be appointed will not, on balance, be able to secure higher distributions to the creditors than those that the RJ Plan (in draft form) currently proposes. The purported negative fiscal consequences have encountered reasoned challenge and lack specific and examinable substantiation. The contention that the RJ proceedings will be "distorted" by Oi Coop's bankruptcy has not been properly substantiated either.

That, according to Oi Coop, Citadel et al. only represent a relatively small group of noteholders is, aside from the question of whether this is truly the case, not of decisive importance given that any creditor may apply for withdrawal of the suspension of payments and given that Oi Coop has failed to



substantiate why, contrary to the findings set out above, the fact that Citadel et al. represent a small group of creditors should lead to a decision not to withdraw the suspension of payments and not to pronounce bankruptcy (for example because a majority of the creditors (who are not part of the Oi Group) support the maintenance of the suspension of payments). In conclusion, Oi Coop contends that a decision declaring Oi Coop bankrupt and appointing a bankruptcy trustee may well not be recognised in Brazil. Whatever the case in this regard may be, this does not constitute grounds for not offering the estate the opportunity to effectively uphold, to the extent of its ability, its interest, including that of its creditors, by means of a bankruptcy trustee to be appointed.

4.15.    The conclusion is that the grievances put forward by Citadel et al. as reviewed above succeed and the contested decision will be annulled. The suspension of payments provisionally granted to Oi Coop will be withdrawn and Oi Coop will be declared bankrupt. It also follows from the foregoing that the declaration of bankruptcy constitutes main proceedings within the meaning of Regulation No 1346/2000 of the Council of the European Union. In the light of the provisions of Article 3, paragraph 1 of that Regulation, the Court of Appeal will open these main proceedings given that it is of the opinion that the centre of Oi Coop's main interests is located in the Netherlands. The remaining grievances need not be addressed. As the party against whom the judgment is given, Oi Coop will be ordered to pay the costs in both instances. The administrator's fee and the other costs incurred in the suspension of payments will be established in a separate decision to be handed down by the District Court.

## 5.  The decision

The Court of Appeal:

-   annuls the judgment of 2 February 2017 of the District Court of Amsterdam insofar as it concerns the application submitted by Citadel et al., and in a new judgment:

-   withdraws the suspension of payments provisionally granted to Oi Coop;

-   declares Oi Coop bankrupt;

-   appoints as supervisory judge *mr.* W.F. Korthals Altes, a judge of the District Court of Amsterdam and appoints as bankruptcy trustee *mr.* J.R. Berkenbosch, associated with Jones Day Advocaten en Notarissen, Concertgebouwplein 20, P.O. Box 51204, 1007 EE Amsterdam, telephone number 023 - 5530230;

-   orders the bankruptcy trustee to open letters and telegrams addressed to Oi Coop;

-   orders Oi Coop to pay the costs of the proceedings in both instances, which in the first instance were assessed by Citadel et al. at €619 in disbursements and at €904 in attorney fees, and which in the appellate proceedings up until the time of this judgment have been assessed by Citadel et al. at €716 in disbursements and at €1,788 in attorney fees;

-   understands that the administrator's fee and the other costs incurred in the suspension of payments may be quantified in a separate decision to be rendered by the District Court;



- declares this decision immediately enforceable notwithstanding appeal.

This decision was rendered by *mr.* M.L.D. Akkaya, *mr.* D.J. Oranje and *mr.* J.W.M. Tromp and was pronounced in open court on 19 April 2017 in the presence of the clerk.

[Illegible signature]                [Illegible signature]

**This decision made be appealed to the Dutch Supreme Court within eight days following the date of the judgment by filing an application with the registry of the Dutch Supreme Court.**

Certified as a true copy
The clerk of the
Amsterdam Court of Appeal
[Illegible signature]



# beschikking                AFSCHRIFT

**GERECHTSHOF AMSTERDAM**

afdeling civiel recht en belastingrecht

| | |
|---|---|
| zaaknummer | : 200.209.207/01 |
| surseancenummer rechtbank Amsterdam | : C/13/16/41 S |

**beschikking van de meervoudige burgerlijke kamer van 19 april 2017**

in de zaak van:

**1. CITADEL EQUITY FUND LTD.,**
gevestigd te Grand Cayman (Kaaimaneilanden),
**2. SYZYGY CAPITAL MANAGEMENT LTD. (AURELIUS),**
gevestigd te New York (Verenigde Staten van Amerika),
**3. TRINITY INVESTMENTS DESIGNATED ACTIVITY COMPANY,**
gevestigd te Dublin (Ierland),
**4. YORK GLOBAL FINANCE FUND L.P.,**
gevestigd te Londen (Verenigd Koninkrijk),
appellanten,
advocaten: mrs. F. Verhoeven, G.H. Gispen en D.G.J. Heems te Amsterdam,

tegen

**OI BRASIL HOLDINGS COÖPERATIEF U.A.,**
gevestigd te Amsterdam,
geïntimeerde,
advocaten: mrs. L.P. Kortmann en V.G.M. Leferink te Amsterdam.


1. **Het geding in hoger beroep**

Appellanten worden hierna gezamenlijk Citadel c.s. genoemd, geïntimeerde Oi Coop.

Citadel c.s. zijn bij op 10 februari 2017 ter griffie van het hof ingekomen beroepschrift in hoger beroep gekomen van de beschikking van de rechtbank Amsterdam van 2 februari 2017 met bovengenoemd surseancenummer, waarbij hun verzoek strekkende tot het intrekken van de voorlopig verleende surseance van betaling en het gelijktijdig uitspreken van het faillissement van Oi Coop is afgewezen.

Het hoger beroep is behandeld op de zitting van het hof van 29 maart 2017.
Bij die behandeling zijn namens Citadel c.s. verschenen mrs. Verhoeven, Gispen en Heems voornoemd, alsmede mr. H.M.E. van Baren, advocaat te Amsterdam. Mrs. Gispen en Verhoeven hebben het beroepschrift nader toegelicht aan de hand van aan het hof overgelegde pleitnotities.
Namens Oi Coop zijn verschenen mrs. Kortmann en Leferink voornoemd alsmede mr. A. Ourhris, advocaat te Amsterdam. Mr. Kortmann heeft hierna te noemen verweerschrift nader toegelicht aan de hand van een aan het hof overgelegde pleitnota.
Tevens is verschenen de bewindvoerder, mr. J.R. Berkenbosch, vergezeld van zijn kantoorgenoten mrs. E.J. Schuurs en Y.S. Beerepoot, advocaten te Amsterdam, die zijn standpunt heeft toegelicht aan de hand aan het hof overgelegde spreekaantekeningen.

zaaknummer: 200.209.207/01                                                                 2

Voorts zijn namens Portugal Telecom International Finance B.V. (hierna: PTIF) in haar
hoedanigheid van schuldeiser van Oi Coop verschenen mrs. R.D. Vriesendorp, R. van den
Sigtenhorst en K.M. Sixma, advocaten te Amsterdam. Mr. Van den Sigtenhorst heeft het
standpunt van PTIF nader toegelicht aan de hand van aan het hof overgelegde
spreekaantekeningen.
Verder is namens The Bank of New York Mellon (hierna: BNYM), optredend ten behoeve
van de 2022 en 2021 beneficial noteholders, verschenen mr. M.H.R.N.Y. Cordewener,
advocaat te Amsterdam.
Mrs. Verhoeven en Gispen voornoemd zijn tevens verschenen namens Monarch Master
Funding 2 (Luxembourg) S.à.r.l. (hierna: Monarch) als houder van door Oi Coop uitgegeven
obligaties.
Ten slotte is verschenen de bewindvoerder van PTIF, mr. J.L.M. Groenewegen, vergezeld van
zijn kantoorgenoot mr. D.J. Bos, advocaat te Amsterdam.

Het hof heeft kennisgenomen van:
- het beroepschrift, met bijlage (productie 25);
- de stukken van de procedure in eerste aanleg, waaronder het proces-verbaal van de
  zitting van 12 januari 2017;
- de brief van de bewindvoerder van 16 maart 2017, met bijlagen (bijlage 1 tot en met
  3);
- de brief van de bewindvoerder van PTIF van 20 maart 2017;
- het verweerschrift van Oi Coop van 22 maart 2017, met bijlagen (genummerd 1 tot en
  met 21c);
- de zienswijze van de bewindvoerder van 23 maart 2017, met bijlagen (producties 1 tot
  en met 6);
- brieven van Oi Coop van 20 maart en 24 maart 2017;
- brieven van Citadel c.s. van 21 maart, 22 maart en 24 maart 2017;
- nadere stukken van Citadel c.s. (productie 26 tot en met 33) ingediend bij brief van 27
  maart 2017;
- nadere stukken van Oi Coop (bijlage 22 tot en met 24) ingediend bij brief van 28
  maart 2017.

De advocaten hebben verklaard kennis te hebben genomen van de genoemde stukken.

**2.  De mondelinge behandeling in hoger beroep**

2.1.    Op de door partijen gedane verzoeken als vervat in de brieven van de bewindvoerder
(16 maart 2017), van Oi Coop (20 maart 2017) en van Citadel c.s. (22 maart 2017) inzake
openbaarheid van de zitting heeft het hof voorafgaand aan de zitting beslist. Deze beslissingen
zijn meegedeeld aan betrokkenen per e-mail van 23 maart 2017 en bij brief van 24 maart
2017, die als volgt luiden. Naar analogie van artikel 220 van de Faillissementswet (Fw) heeft
de behandeling van het onderhavige hoger beroep plaats in raadkamer. Zij die kunnen
aantonen dat zij schuldeiser zijn, mogen de behandeling van het hoger beroep bijwonen. Ook
de bewindvoerder van PTIF mag hierbij aanwezig zijn. Ten slotte heeft het hof op de voet van
artikel 29 van het Wetboek van Burgerlijke Rechtsvordering (Rv) bepaald dat het verboden is
aan derden mededelingen te doen omtrent al hetgeen in raadkamer wordt verhandeld en de
inhoud van de processtukken. Hoewel Oi Coop daarom heeft verzocht, is er geen aanleiding
van deze beslissing terug te komen.

zaaknummer: 200.209.207/01                                                           3

2.2.    Met inachtneming van het hiervoor bepaalde heeft het hof N. Wendling, werkzaam bij
G5 Evercore en financieel adviseur van Citadel c.s., verzocht de zitting te verlaten aangezien
hij geen schuldeiser van Oi Coop is. Hij heeft aan dit verzoek voldaan. Namens PTIF, BNYM
en Monarch zijn (bewijs)stukken overgelegd waarmee genoegzaam is aangetoond in welke
hoedanigheid zij in raadkamer zijn verschenen en dat zij ieder voor zich belang hebben om
hierbij aanwezig te zijn. Gelet hierop heeft het hof bepaald dat PTIF, BNYM en Monarch bij
de behandeling in raadkamer aanwezig mogen zijn.


3.    De vaststaande feiten

3.1.    Op 9 augustus 2016 heeft Oi Coop bij de rechtbank Amsterdam het verzoek ingediend
haar (voorlopige) surseance van betaling te verlenen. Bij het verzoekschrift was een
ontwerpakkoord gevoegd. Bij beschikking van 9 augustus 2016 is door de rechtbank aan Oi
Coop voorlopige surseance van betaling verleend met benoeming van mr. Berkenbosch
voornoemd tot bewindvoerder en mr. W.F. Korthals Altes tot rechter-commissaris. Daarbij
heeft de rechtbank tevens gelast dat de in artikel 218 Fw bedoelde behandeling (vergadering
van schuldeisers) niet zal plaatshebben en dat op 18 mei 2017 te 10:00 uur ten overstaan van
de rechter-commissaris de raadpleging van stemming over het aangeboden akkoord zal
worden gehouden.

3.2.    Oi Coop is op 20 april 2011 opgericht en maakt onderdeel uit van een groep
vennootschappen (hierna: de Oi Groep). De Oi Groep is één van de grootste geïntegreerde
serviceproviders in de telecommunicatiesector ter wereld. Enig lid van Oi Coop is Oi S.A., de
moedervennootschap van de Oi Groep. De aandelen in Oi S.A. worden op de beurs van São
Paulo verhandeld en op de New York Stock Exchange. Een groot deel van de financiering van
de Oi Groep loopt via haar twee Nederlandse financieringsmaatschappijen: Oi Coop en PTIF.
Aan PTIF is op 3 oktober 2016 voorlopige surseance van betaling verleend, waarbij mr.
Groenewegen voornoemd tot bewindvoerder is benoemd en mr. M.J.E. Geradts tot rechter-
commissaris.

3.3.    De operationele activiteiten van de Oi Groep vinden voornamelijk in Brazilië plaats,
maar de Oi Groep is ook actief (geweest) in Portugal en diverse Afrikaanse landen. Op de
telecomactiviteiten wordt in Brazilië toezicht gehouden door het Braziliaanse Agência
National de Telecomunicações (hierna: ANATEL).

3.4.    De activiteiten van Oi Coop bestaan uit (i) het aantrekken van gelden uit de
internationale kapitaalmarkten, voornamelijk door het uitgeven van notes (obligaties), (ii) het
ontvangen van gelden van PTIF via een kredietovereenkomst die Oi Coop en PTIF op 2 juni
2015 zijn aangegaan en die van tijd tot tijd is aangepast (hierna: de PTIF lening) en (iii) het
doorlenen van gelden die Oi Coop door middel van de notes heeft aangetrokken of van PTIF
(door middel van de PTIF lening) heeft ontvangen, aan leden van de Oi Groep. De notes zijn
gegarandeerd door Oi S.A. Oi Coop heeft zelf geen operationele activiteiten en de noteholders
kunnen uitsluitend worden betaald van de inkomsten en opbrengsten gegenereerd door de
operationele ondernemingen van de Oi Groep. Op grond van de garantie van Oi S.A. hebben
de noteholders tevens een directe vordering op Oi S.A.

3.5.    Oi Coop heeft twee series van obligaties uitgegeven, per 20 juni 2016 voor in totaal
€ 1,9 miljard. Onder de PTIF lening heeft zij een schuld aan PTIF van circa € 3,8 miljard. Oi
Coop heeft circa € 4 miljard uitgeleend aan Oi S.A. in de periode van juni 2015 tot maart 2016

zaaknummer: 200.209.207/01                                                                4

---

en circa € 1,6 miljard aan Oi Móvel S.A (hierna Oi Móvel) in maart 2016 (hierna tezamen
aangeduid als: de Oi Coop transacties)

3.6.    Oi Coop heeft op 20 juni 2016, tezamen met Oi S.A. en vijf andere
groepsvennootschappen, te weten PTIF, Oi Móvel, Telemar Norte Leste S.A., Copart 4
Participações en Copart 5 Participações S.A. (hierna gezamenlijk te noemen: de RJ
schuldenaren) een verzoekschrift ingediend voor de opening van een geconsolideerde
gerechtelijke herstructureringsprocedure in Brazilië (recuperação judicial, hierna: de RJ
procedure). De Braziliaanse rechtbank heeft dit verzoek op 29 juni 2016 ingewilligd. Het doel
·van de RJ procedure is om going concern de Oi Groep te herstructureren door middel van een
met de schuldeisers onderhandeld en door de schuldeisers en de rechtbank goedgekeurd
akkoord (hierna: het RJ akkoord) om liquidatie te voorkomen. Op 5 september 2016 is een
geconsolideerd (ontwerp-)RJ akkoord gedeponeerd bij de rechtbank te Rio de Janeiro in
Brazilië. Oi S.A. heeft bij persbericht van 22 maart 2017 aangekondigd dat het (ontwerp-)RJ-
akkoord aangepast zal worden. De aanpassingen blijken uit het bij dat persbericht gevoegde
aanhangsel. Uit het oorspronkelijke (ontwerp-)RJ akkoord en het aangepaste (ontwerp-)RJ
akkoord volgt dat Oi Coop geen uitkering zal ontvangen op haar vorderingen op Oi S.A. en Oi
Móvel op grond van de Oi Coop transacties. De bestuursvoorzitter van Oi S.A heeft hierover
meegedeeld: "This is the proposal we'll send to the judge and put to a vote."

3.7.    De bewindvoerder van Oi Coop heeft bij brief van 2 maart 2017 aan het bestuur van
Oi Coop het volgende, voor zover van belang, geschreven:
*"(...)*
*1.2     The Court has instructed us (directors and administrator) to discuss the possibilities*
*for further cooperation, in pursuit of a Dutch composition plan that is acceptable to the Coop*
*creditors (see the Decision at 8.20 Decision). During our video conference on 7 March*
*2017 we will discuss those possibilities for further cooperation, including preparations for*
*the creditors' meeting on 18 May 2017 and the working mode to be adopted.*
*1.3 The present letter raises a number of fundamental questions based on the Decision. My*
*aim is to achieve clarity on what intentions Coop and Oi S.A. ("Oi") have, and whether they*
*are indeed willing to address the issues in a new amended RJ Plan.*
*(...)*
*3. QUESTIONS*
*3.1 (...) I have various questions, which are set out below. Please respond as soon as possible,*
*and at the latest by 10 March 2017 COB. The Financial Information (question 5) and the new*
*and amended RJ Plan (question 1) at the latest by 22 March 2017 COB.*
*(...)*
*3.5 Question 1.—Amended RJ Plan*
*(i) When will an amended RJ Plan be presented that can be considered an offer rather*
*than a draft placeholder plan only?*
*(...)*
*3.6 Question 2. - Intercompany Claims*
*(i) What recovery is (or will be) offered to Coop for the Intercompany Claims under*
*the (new amended) RJ Plan?*
*(...)*
*(ii) If no recovery is offered to Coop, what equivalent compensation is (or will be)*
*offered to Coop's creditors for the renunciation of the right of recovery on the*
*Intercompany Claims?*
*3.7 Question 3. - Guarantee Claims*
*(i) What recovery, if any, is (or will be) offered to Coop's creditors under the (new*
*amended) RJ Plan for the Guarantee Claims?*

zaaknummer: 200.209.207/01                                                              5

(...)
(ii) Why do Coop's creditors receive the same payment for two claims as other Class
III creditors of the RJ Debtors receive for one claim?
3.8 Question 4. - Bankruptcy scenario/Secondary Claims
(i) What recovery is (or will be) offered to Coop's creditors under the (new amended)
RJ Plan for the Secondary Claims (...)?
(...)
3.9 Question 5. - Financial Information
(i) Please confirm that you are willing to provide the Financial Information (including
segregated creditors' lists) by COB on 22 March 2007 at the latest.
Once I receive your confirmation, I will provide you with further questions
regarding the financial information that I need in order to perform my tasks as
administrator (...)
(ii) Please confirm that you (RJ Debtors) are willing to support and finance that I
retain a financial expert.
3.10 Question 6. - Withdrawal of the filing of 28 November 2016
(i) Please confirm that you will immediately withdraw the filing of 28 November
2016.
(...)
3.11 Question 7. - Consolidation
(i) Why is substantive consolidation of the assets and liabilities of the RJ Debtors in
the best interests of Coop's creditors, compared with an unconsolidated restructuring?
You represented this in the writ of defence, and the Court took it into
consideration. I presume that you can support this sweeping statement by
presenting expert opinions; if so, kindly share these opinions with me. According
to the calculations presented to me by creditor groups, unconsolidated restructuring
could substantially increase the recovery for Coop's creditors (45.80% via Coop
plus 18% on Guarantee Claims instead of a total of approximately 30% under
current RJ Plan). In your answer, please include what percentage Coop's creditors
would receive if the RJ Plan did not provide for substantive consolidation.
3.12 Question 8. - Tax implications
(i) Why does substantive consolidation provide for an optimal tax structure in the
restructuring?
(ii) Why does bankruptcy of Coop have negative tax implications for Coop's creditors?
(iii) Why would a distribution on the Intercompany Claims trigger negative tax
implications?
(...)
3.13 Question 9. - Respect the vote in the Netherlands
(1) Please confirm that you will not withdraw the suspension of payment proceedings
and that you will respect and act in accordance with the outcome of the vote by
Coop's creditors in the Dutch proceedings. (...) "

3.8.    Het bestuur van Oi Coop heeft bij brief van 15 maart 2017 het volgende, voor zover
van belang, hierop geantwoord aan de bewindvoerder:
"(...) As discussed during the recent video conference, we would like to propose to address
your questions during our future scheduled conferences, as the restructuring process further
develops and the required information becomes available (some of your information requests
can simply not be complied with at this stage of the restructuring process, which is not
uncommon in multi-jurisdictional restructurings). (...) "

zaaknummer: 200.209.207/01                                                6

## 4. De beoordeling

4.1.   Naast Citadel c.s. heeft ook de bewindvoerder van Oi Coop de rechtbank verzocht om intrekking van de voorlopig verleende surseance en het gelijktijdig uitspreken van het faillissement van Oi Coop. De rechtbank heeft het verzoek van de bewindvoerder in dezelfde beschikking waarvan beroep afgewezen en heeft daartoe, kort samengevat, overwogen dat niet gesteld of gebleken is dat de schuldeisers beter af zullen zijn in geval de surseance wordt ingetrokken en Oi Coop failliet wordt verklaard en geen van de gronden voor intrekking van de surseance (artikel 242 lid 1 Fw) zich voordoet. De rechtbank heeft partijen ten slotte in overweging gegeven met elkaar in gesprek te gaan om de vervachtingen over en weer (opnieuw) met elkaar af te stemmen en om de bewindvoerder in staat te stellen zijn taak behoorlijk te vervullen.
Het verzoek van Citadel c.s. is eveneens afgewezen, nu dit verzoek volgens de rechtbank geen andere gronden bevat dan dat van de bewindvoerder.
Tegen deze beslissing en de daaraan ten grondslag gelegde motivering komen Citadel c.s. met hun grieven op.

4.2.   De primaire grief van Citadel c.s. houdt in dat de bestreden beschikking voor zover betreffende hun procedure jegens Oi Coop onvoldoende gemotiveerd is. Deze grief faalt. De rechtbank heeft in haar beschikking overwogen dat Citadel c.s. geen andere gronden hebben aangevoerd dan de bewindvoerder aan zijn verzoek ten grondslag heeft gelegd en dat hun verzoek "ook" niet kan leiden tot intrekking van de voorlopig verleende surseance. Naar het hof begrijpt heeft de rechtbank daarmee bedoeld dat haar motivering van de afwijzing van de door de bewindvoerder aangevoerde gronden ook geldt voor de door Citadel c.s. aangevoerde, identieke gronden. Dat Citadel c.s., naar zij stellen, het verzoekschrift van de bewindvoerder "nooit hebben gezien" doet hieraan niet af.

4.3.   Citadel c.s. werpen voorts als grief op dat de rechtbank ten onrechte aan de intrekkingsgrond dat de schuldenaar tracht zijn schuldeisers te benadelen (artikel 242 lid 1 sub 2 Fw) de voorwaarde heeft verbonden dat dit gedurende de loop de surseance moet plaatsvinden. Deze tijdsbepaling is echter alleen in artikel 242 lid 1 sub 1 Fw vermeld. Nu de bewindvoerder heeft vastgesteld dat Oi Coop samen met Oi S.A. en Oi Móvel haar schuldeisers ernstig heeft benadeeld in het jaar voorafgaande aan de surseance, is aan de grond voor intrekking in artikel 242 lid 1 sub 2 voldaan, aldus Citadel c.s.

4.4.   Het hof overweegt als volgt. In artikel 218 lid 4 Fw is bepaald dat surseance nimmer definitief kan worden verleend, indien er gegronde vrees bestaat dat de schuldenaar zal trachten de schuldeisers tijdens de surseance te benadelen. Artikel 242 lid 1 sub 1 Fw bepaalt dat de surseance door de rechtbank kan worden ingetrokken, indien de schuldenaar zich, gedurende de loop der surseance, aan kwade trouw in het beheer van de boedel schuldig maakt. Deze twee bepalingen zien blijkens de daarin verwoorde tijdsbepaling op ontoelaatbaar handelen of nalaten van de schuldenaar tijdens de surseance. Een dergelijke tijdsbepaling is echter niet opgenomen in artikel 242 lid 1 sub 2 Fw: de surseance kan worden ingetrokken, indien de schuldenaar zijn schuldeisers tracht te benadelen. Dit duidt er op dat die tijdsbepaling niet geldt voor deze intrekkingsgrond. Voorts zou een geval waarin een schuldenaar gedurende de surseance zijn schuldeisers zou trachten te benadelen al vallen onder zijn kwade trouw in het beheer van de boedel als bedoeld in artikel 242 lid 1 sub 1 Fw. Dit brengt met zich dat het geval van sub 2 geen zelfstandige betekenis zou hebben uitgaande van de lezing van de rechtbank, hetgeen de wetgever niet beoogd zal hebben. Het ligt ook in de rede dat de wetgever niet mogelijk heeft willen maken dat de surseance beëindigd kan worden, indien de bewindvoerder tijdens zijn werkzaamheden handelen of nalaten van de

schuldenaar voorafgaand aan de surseance die leiden tot benadeling van de schuldeisers, heeft
ontdekt. In een dergelijk geval "verdient" de schuldenaar in beginsel niet een uitstel van
betaling van zijn schuldeisers.

4.5.    In dit verband is het volgende van belang. Het staat tussen partijen vast dat Oi Coop in
de periode juni 2015 tot en met maart 2016 € 5,6 miljard heeft geleend aan Oi S.A. en Oi
Móvel, waarvan € 1,6 miljard aan Oi Móvel enkele dagen voordat op 9 maart 2016 bekend
werd gemaakt dat een financieel adviseur was aangesteld met het oog op een herstructurering
van de schulden van de Oi Groep. Uit het uittreksel uit het handelsregister betreffende Oi
Coop d.d. 22 december 2016 (productie 1 bij verzoekschrift van Citadel c.s.) volgt dat A.J.
Lavatori Correa sinds 3 maart 2016 bestuurder van Oi Coop is. Voldoende aannemelijk is,
gezien zijn zakelijke e-mailadres (lavatori@oi.net.br), dat hij een werknemer is van een van de
leden van de Oi Groep, althans daarin een functie bekleedt. In het tweede openbare verslag
van de bewindvoerder van 3 maart 2017 is onder 7.3 vermeld dat de lening van € 1,6 miljard
aan Oi Móvel is verstrekt na de bestuurswissel per 3 maart 2016, hetgeen niet is weersproken
door Oi Coop.
De bewindvoerder heeft voormelde leningen als paulianeus, althans onrechtmatig aangemerkt.
Daargelaten of alle leningen aan (een van) deze kwalificaties voldoen, mede gezien het feit dat
Oi Coop als financieringsvehikel binnen de Oi Groep ook het bevorderen van het bestendige
succes van de onderneming van de Oi Groep in ogenschouw heeft te nemen, is in ieder geval
de lening van € 1,6 miljard zeer verdacht. Deze lening is namelijk kort voor de aankondiging
van de herstructurering van de schulden van de Oi Groep verstrekt, waarbij verder van belang
is de positie van Oi Coop als financieringsvehikel binnen de Oi Groep en de feitelijke
betrokkenheid van de Oi Groep bij Oi Coop ten tijde van de verstrekking van deze lening
aangezien een van haar mensen toen sinds kort bestuurder van Oi Coop was. Op grond van
deze feiten en omstandigheden, in onderling verband en samenhang beschouwd, acht het hof
aannemelijk dat het bestuur van Oi Coop wetenschap had van de financiële problemen van de
Oi Groep toen zij de lening van € 1,6 miljard aan Oi Móvel verstrekte. Overigens stelt Oi
Coop niet dat zij deze wetenschap niet had.
Nu een herstructurering van schulden in beginsel ertoe leidt dat schuldeisers niet meer geheel,
althans niet tijdig worden voldaan en Oi Coop wist of redelijkerwijze behoorde te begrijpen
dat Oi Móvel respectievelijk Oi S.A. niet, of niet binnen een redelijke termijn, aan haar
terugbetalingsverplichting jegens Oi Coop respectievelijk haar garantieverplichting jegens de
noteholders zou kunnen voldoen, is voldoende aannemelijk dat sprake is van een
benadelingshandeling als bedoeld in artikel 242 lid 2 sub 2 Fw. Hierbij is in aanmerking
genomen dat Oi Coop blijkens het aangeboden (ontwerp-)RJ akkoord en het aangepaste
(ontwerp-)RJ akkoord heeft ingestemd met geconsolideerde herstructurering van de schulden
van de Oi Groep waarbij op haar vorderingen op Oi S.A. en Oi Móvel op grond van de Oi
Coop transacties geen uitkering zal plaatsvinden, hetgeen (in ieder geval) voor de lening van
€ 1,6 miljard aan Oi Móvel, gezien het benadelende karakter ervan, niet voor de hand ligt.

4.6.    Bovendien is hier sprake van een daad van beheer of beschikking van Oi Coop
betreffende een boedelbestanddeel, namelijk het door haar doen van een voorstel tot afstand
van haar vorderingen op Oi S.A en Oi Móvel, waarvoor ingevolge artikel 228 lid 1 Fw de
toestemming van de bewindvoerder vereist was, terwijl Oi Coop die toestemming niet heeft
gevraagd. Hiermee is voldaan aan de intrekkingsgrond van artikel 242 lid 1 sub 3 Fw.

4.7.    Citadel c.s. grieven verder met het betoog, kort samengevat, dat de bewindvoerder
vanaf dag één tot aan het einde van zijn benoeming over dezelfde informatie als (het bestuur
van) Oi Coop moet kunnen beschikken "teneinde met de schuldenaar het beheer over diens

zaken te voeren" (artikel 215 lid 2 Fw), terwijl (het bestuur van) Oi Coop weigert om die
informatie met de bewindvoerder te delen.

4.8.   In dit verband is de zienswijze van de bewindvoerder, zoals hij die voor de zitting in
hoger beroep aan het hof heeft toegezonden en ter zitting nader heeft toegelicht, van belang.
Deze zienswijze is niet, zoals Oi Coop ter zitting heeft betoogd, een ontoelaatbaar verkapt
appel in weerwil van het gegeven dat de bewindvoerder geen hoger beroep heeft ingesteld. De
bewindvoerder wordt ingevolge artikel 242 lid 3 Fw hoe dan ook gehoord om zijn zienswijze
kenbaar te maken.

4.9.   De bewindvoerder wijst erop dat de Oi Groep in een persbericht van 22 maart 2017 (zie
hiervoor onder 3.6) bekend heeft gemaakt dat er op korte termijn een gewijzigde versie van
het (ontwerp-)RJ akkoord ingediend zal worden. In de bijlage bij het persbericht worden de
wijzigingen toegelicht. Volgens bewindvoerder kan hieruit worden afgeleid dat ook in het
gewijzigde plan (i) aan Oi Coop geen vergoeding wordt toegekend voor haar intercompany
vorderingen op grond van de Oi Coop transacties, (ii) ook overigens geen rekening wordt
gehouden met de Oi Coop transacties, die de bewindvoerder paulianeus en onrechtmatig acht,
en (iii) geen rekening wordt gehouden met het feit dat de noteholders naast hun vorderingen
op Oi Coop ook vorderingen op Oi S.A. hebben uit hoofde van de door haar verstrekte
garantie. De bewindvoerder wijst er verder op dat dit gewijzigde plan mede namens Oi Coop
wordt ingediend maar niet met hem is besproken.

4.10.   Gelet op het voorgaande is de bewindvoerder van oordeel dat sinds de behandeling van
het intrekkingsverzoek door de rechtbank in eerste aanleg en ondanks de door de rechtbank
gegeven aanbeveling in de bestreden beschikking om met hem samen te werken (i) (het
bestuur van) Oi Coop nog immer weigert om hem van de informatie te voorzien die nodig is
om zijn taak naar behoren te kunnen vervullen, (ii) (het bestuur van) Oi Coop hem niet betrekt
bij belangrijke handelingen namens Oi Coop, zoals het wijzigen van het (ontwerp-)RJ
akkoord, met directe gevolgen voor het vermogen van Oi Coop. Daar komt bij dat de Oi
Groep weliswaar stelt dat op een positieve wijze wordt onderhandeld met de schuldeisers,
maar in ieder geval een grote groep schuldeisers van de Oi Groep (die tezamen vorderingen
vertegenwoordigen van ongeveer $ 4 miljard) heeft laten weten dat de Oi Groep in het geheel
niet met hen onderhandelt.

4.11.   De bewindvoerder concludeert dat uit de gang van zaken na de bestreden beschikking is
gebleken dat (het bestuur van) Oi Coop en de Oi Groep hun strategie om hem buiten te sluiten
niet zullen wijzigen. Met de aangekondigde wijzigingen van het (ontwerp-)RJ akkoord staat
vast dat Oi Coop en de Oi Groep geen rekening zullen houden met de bijzondere positie van
Oi Coop en de schuldeisers van Oi Coop als gevolg van de intercompany-vorderingen, de
garantievorderingen op Oi S.A. en de Oi Coop transacties. Daarom acht de bewindvoerder het
in het belang van de schuldeisers van Oi Coop dat er een (onafhankelijke) curator wordt
benoemd die hun belangen kan waarborgen en, zolang dat nog kan, waar nodig hiertoe invloed
kan uitoefenen op de RJ procedure in Brazilië.

4.12.   Het hof constateert dat uit de onder 3.7 en 3.8 weergegeven correspondentie tussen de
bewindvoerder en het bestuur van Oi Coop volgt dat Oi Coop niet bereid is tot het
beantwoorden van de vragen van de bewindvoerder, die het hof ter zake dienend acht gezien
zijn taak om met het bestuur van Oi Coop het beheer over haar zaken te voeren (artikel 215 lid
2 Fw) en ter vergadering verslag uit te brengen over het aangeboden akkoord (artikel 265 lid 1
Fw). Het moge zo zijn dat de RJ procedure een gecompliceerd proces is en dat de uitkomsten
niet althans niet precies kunnen worden voorspeld, maar het antwoord van het bestuur van

zaaknummer: 200.209.207/01                                                                9

Oi Coop (zie hiervoor onder 3.8) getuigt van geen reële bereidheid om met de bewindvoerder
daadwerkelijk en zinvol in overleg te treden over de financiële implicaties van het (ontwerp-)
RJ akkoord voor de boedel. Deze onwil volgt ook uit het gegeven dat, naar niet is
weersproken, het aangepaste (ontwerp-)RJ akkoord mede namens Oi Coop is ingediend, maar
niet met de bewindvoerder is besproken. Ten slotte getuigt ook het antwoord van het bestuur
van Oi Coop om pas vragen te beantwoorden *as the restructuring process further develops
and the required information becomes available"* van een passieve, afwachtende houding van
het bestuur van Oi Coop die zich de financiële consequenties van het naderend RJ akkoord
laat welgevallen zonder, zoals van het bestuur mag worden verwacht, zich, in het belang van
de boedel, in samenspraak met de bewindvoerder te beraden over de gevolgen van het
voorgenomen RJ akkoord en daarvoor actief de nodige informatie te vergaren en met de
bewindvoerder te delen.

4.13.  Het hof onderkent dat Oi Coop als financieringsmaatschappij van de Oi Groep haar
handelen wenst af te stemmen op de gerechtvaardigde belangen van de groep waartoe zij
behoort, maar dit laat onverlet dat zij de belangen van haar eigen schuldeisers niet uit het oog
mag verliezen. Daarmee is niet verenigbaar dat (het bestuur van) Oi Coop de bewindvoerder
geen althans onvoldoende informatie verschaft waardoor de bewindvoerder onvoldoende
inzicht krijgt in de Braziliaanse akkoordonderhandelingen en daardoor niet kan beoordelen of
het aanvaarden en geconsolideerde herstructurering van de schulden in het kader van de RJ
procedure in het belang is van de boedel. Dit brengt met zich dat de hiervoor onder 4.11
omschreven handelingen en gedragingen van (het bestuur van) Oi Coop die in weerwil zijn
van de aanbeveling van de rechtbank, een grond opleveren voor intrekking van de surseance
op de voet van artikel 242 lid 1 sub 4 Fw.

4.14.  Uit het voorgaande volgt dat aan de sub 2, 3 en 4 van artikel 242 lid 1 Fw weergegeven
intrekkingsgronden is voldaan. Oi Coop voert, kort samengevat, het volgende aan ter
rechtvaardiging dat de surseance niet wordt ingetrokken en het faillissement niet wordt
uitgesproken. Het faillissement van Oi Coop biedt geen voordelen aan de schuldeisers (geen
hogere vergoeding, schuldeisers kunnen nu al meedoen in de RJ procedure) en heeft alleen
nadelen (ontwrichting van de RJ procedure, faillissement Oi Coop zou negatieve fiscale
gevolgen kunnen hebben).
De door het hof gemaakte afweging van de betrokken belangen leidt ertoe dat de surseance
moet worden ingetrokken en het faillissement moet worden uitgesproken. Gezien het
aangepaste (ontwerp-)RJ akkoord, waarover de bestuursvoorzitter van Oi S.A. heeft
meegedeeld *"This is the proposal we'll send to the judge and put to a vote."*, is thans, anders
dan ten tijde van de bestreden beschikking (zie rov. 8.7 ervan), voldoende aannemelijk dat op
de vorderingen van Oi Coop jegens Oi S.A. en Oi Móvel geen uitkering zal plaatsvinden.
Voorts heeft de aanbeveling van de rechtbank aan Oi Coop om met de bewindvoerder samen
te werken en hem van de nodige informatie te voorzien om zijn taak behoorlijk te kunnen
vervullen (zie rov. 8.20), zoals uit het voorgaande volgt, niet tot het gewenste resultaat geleid.
De door Oi Coop in dit verband genoemde argumenten volgt het hof niet. Dat een aan te
stellen curator geen per saldo (van Oi Coop en de garant Oi S.A.) hogere uitkeringen aan de
schuldeisers zou kunnen bewerkstelligen dan waarin het (concept) RJ akkoord thans voorziet,
staat, zonder nadere toelichting, die ontbreekt, niet op voorhand vast. De vermeende negatieve
fiscale gevolgen zijn gemotiveerd betwist en ontberen concrete en inzichtelijke onderbouwing.
De stelling dat door het faillissement van Oi Coop de RJ procedure "ontwricht" zal worden, is
evenmin concreet onderbouwd.
Dat Citadel c.s. volgens Oi Coop slechts een relatief kleine groep noteholders betreft is
daargelaten of dat inderdaad zo is, niet van beslissend belang, nu iedere schuldeiser de
intrekking van de surseance kan verzoeken en Oi Coop niet heeft onderbouwd waarom het

zaaknummer: 200.209.207/01                                                        10

gegeven dat Citadel c.s. een kleine groep schuldeisers vertegenwoordigen ertoe moet leiden
dat, in weerwil van het vooroverwogene, van de intrekking van de surseance en het uitspreken
van het faillissement moet worden afgezien (bijvoorbeeld omdat een meerderheid van de
schuldeisers (die niet tot de Oi-groep behoren) juist voorstander is van het handhaven van de
surseance). Oi Coop werpt ten slotte op dat de uitspraak waarbij Oi Coop failliet wordt
verklaard en een curator wordt aangesteld mogelijk niet erkend wordt in Brazilië. Wat daar
ook van zij, daarin is geen grond gelegen om de boedel niet de gelegenheid te bieden dat door
middel van een aan te stellen curator naar vermogen effectief opgekomen wordt voor zijn
belang, waaronder dat van zijn schuldeisers.

4.15.   De slotsom is dat de hiervoor behandelde grieven van Citadel c.s. slagen en de
bestreden beschikking zal worden vernietigd. De voorlopig verleende surseance van Oi Coop
zal worden ingetrokken en Oi Coop zal in staat van faillissement worden verklaard. Uit
hetgeen hiervoor is overwogen volgt voorts dat de faillietverklaring een hoofdprocedure in de
zin van Verordening 1346/2000 van de Raad van de Europese Unie betreft. Het hof zal, gelet
op het bepaalde in artikel 3, eerste lid van die Verordening deze hoofdprocedure openen nu
naar zijn oordeel, bij gebreke van aanwijzingen van het tegendeel, het centrum van de
voornaamste belangen van Oi Coop in Nederland ligt. De overige grieven behoeven geen
bespreking. Oi Coop zal als de in het ongelijk gestelde partij in de kosten van beide instanties
worden veroordeeld. Het loon van de bewindvoerder en de overige in de surseance van
betaling gemaakte kosten zullen in een afzonderlijk te geven beschikking door de rechtbank
kunnen worden vastgesteld.

## 5.   De beslissing

Het hof:

-   vernietigt de beschikking van 2 februari 2017 van de rechtbank Amsterdam voor zover
    deze ziet op het door Citadel c.s. gedane verzoek, en opnieuw rechtdoende:

-   trekt de aan Oi Coop voorlopig verleende surseance van betaling in;

-   verklaart Oi Coop in staat van faillissement;

-   benoemt tot rechter-commissaris mr. W.F. Korthals Altes, rechter in de rechtbank
    Amsterdam, en stelt aan als curator mr. J.R. Berkenbosch, verbonden aan Jones Day
    Advocaten en Notarissen, Concertgebouwplein 20, Postbus 51204, 1007 EE Amsterdam,
    telefoonnummer 023 - 5530230;

-   geeft last aan de curator tot het openen van de aan Oi Coop gerichte brieven en
    telegrammen;

-   veroordeelt Oi Coop in de proceskosten in beide instanties, in eerste aanleg aan de zijde
    van Citadel c.s. begroot op € 619,= aan verschotten en op € 904,= voor salaris van de
    advocaat en in hoger beroep tot aan deze uitspraak aan de zijde van Citadel c.s. begroot op
    € 716,= aan verschotten en op € 1.788,= voor salaris van de advocaat;

-   verstaat dat het loon van de bewindvoerder en de overige in de surseance van betaling
    gemaakte kosten in een afzonderlijk te geven beschikking door de rechtbank zullen
    kunnen worden vastgesteld;

zaaknummer: 200.209.207/01                                                            11

---

- verklaart deze beschikking uitvoerbaar bij voorraad.

Deze beschikking is gegeven door mrs. M.L.D. Akkaya, D.J. Oranje en J.W.M. Tromp en in het openbaar uitgesproken op 19 april 2017 in tegenwoordigheid van de griffier.



**Van deze beschikking kan gedurende acht dagen na de dag van de uitspraak beroep in cassatie worden ingesteld door middel van een verzoekschrift in te dienen ter griffie van de Hoge Raad.**



Voor afschrift conform
De griffier van het
Gerechtshof Amsterdam

### A P O S T I L L E

(Convention de La Haye du 5 octobre 1961)

1. Country: THE NETHERLANDS
   This public document
2. has been signed by S.R. Gärtner e/v Bradley
3. acting in the capacity of sworn translator
4. bears the seal/stamp of aforesaid translator

Certified

5. in Amsterdam                     6. on 16-05-2017
7. by the registrar of the district court of Amsterdam
8. no. 022787

9. Seal/stamp:                      10. Signature:

H.H.S. Verhagen







**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
In re:                                        :
                                              :   Chapter 15
Oi Brasil Holdings Coöperatief U.A.,          :
                                              :   Case No. [_____] (SHL)
            Debtor in a Foreign Proceeding.   :
                                              :
-------------------------------------------------------------x
```

## STATEMENT PURSUANT TO
## 11 U.S.C. § 1515(C) IDENTIFYING FOREIGN PROCEEDINGS

Pursuant to section 1515(c) of Title 11 of the United States Code (the "Bankruptcy

Code"), the above-captioned debtor, Oi Brasil Holdings Coöperatief U.A. ("Coop"), hereby

identifies the following foreign proceedings with respect to Coop:

| Proceeding | Court | Country |
|---|---|---|
| Bankruptcy proceeding (*faillissement*) pursuant to the Dutch Insolvency Act (*Faillissementswet*), Case No. F.13/17/163 | The District Court (*rechtbank*) of Amsterdam | The Netherlands |
| Judicial reorganization proceeding (*Recuperacao judicial*) Case No. 0203711-65.2016.8.19.0001 | *7a Vara Empresarial do Rio de Janeiro* (Seventh Business Court of Rio de Janeiro) | Brazil |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
----------------------------------------------------------------x
  In re:                                      :
                                              :   Chapter 15
  Oi Brasil Holdings Coöperatief U.A.,        :
                                              :   Case No. [_____] (SHL)
        Debtor in a Foreign Proceeding.       :
                                              :
----------------------------------------------------------------x
```

## DECLARATION REGARDING THE STATEMENT
## PURSUANT TO 11 U.S.C. § 1515(C) IDENTIFYING FOREIGN PROCEEDINGS

I, Jasper R. Berkenbosch, solely in my capacity as the duly appointed trustee (*curator*) (the "Insolvency Trustee") of Oi Brasil Holdings Coöperatief U.A. ("Coop"), declare under penalty of perjury under the laws of the United States of America, that I have reviewed the foregoing *Statement Pursuant to 11 U.S.C. § 1515(c) Identifying Foreign Proceedings*, and that it is true and correct to the best of my knowledge, information and belief.[1]

Dated:      July 7 , 2017

_____
Jasper R. Berkenbosch
Solely in my capacity as the Insolvency
Trustee and Foreign Representative
of Coop

---

[1] *Penalty for making a false statement or concealing property:* Fine of up to $500,000 or imprisonment for up to 5 years or both. 18 U.S.C. §§ 152 and 3571.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
In re:                                          :
                                                :   Chapter 15
Oi Brasil Holdings Coöperatief U.A.,            :
                                                :   Case No. [_____] (SHL)
           Debtor in a Foreign Proceeding.      :
                                                :
-------------------------------------------------------------x
```

### CORPORATE OWNERSHIP STATEMENT AND RELATED
### DISCLOSURES PURSUANT TO FED. R. BANKR. P. 1007(a)(4) AND 7007.1

Pursuant to rules 1007(a)(4) and 7007.1 of the Federal Rules of Bankruptcy Procedure, the above-captioned debtor, Oi Brasil Holdings Coöperatief U.A. ("Coop"), hereby states the following:

### Corporate Ownership Statement

1.       The following entity directly or indirectly owns 10% or more of Coop's equity interests:  **Oi S.A. (100%)**.

### List of Administrators

2.       The following are the names and addresses of all persons or bodies authorized to administer the currently pending foreign proceedings with respect to Coop:

| Foreign Proceeding | Name / Address |
|---|---|
| Bankruptcy proceeding (*faillissement*) pursuant to the Dutch Insolvency Act (*Faillissementswet*), Case No. F.13/17/163 | Jasper R. Berkenbosch<br>Jones Day<br>Advocaten en Notarissen<br>Concertgebouwplein 20<br>P.O. Box 51204, 1007 EE<br>Amsterdam, the Netherlands<br><br>Hon. Willem F. Korthals Altes<br>Supervisory Judge / Senior Judge with the Amsterdam District Court<br>Parnassusweg 220<br>P.O. Box 84500, 1080 BN<br>Amsterdam, the Netherlands |
| Judicial reorganization proceeding (*Recuperacao judicial*), Case No. 0203711-65.2016.8.19.0001 | Arnoldo Wald<br>Legal Trustee<br>Escritorio de Avocacia Arnoldo Wald<br>Av. Pres. Juscelino Kubitschek<br>510, 8th Fl.<br>CEP:  04543-906<br>Sao Paulo – SP<br>Brazil<br><br>Hon. Fernando Cesar Ferreira Viana<br>State of Rio de  Janeiro<br> Judiciary Court of Justice<br>Judicial District of the Capital<br>Office of the 7th Business Law Court<br>Av. Erasmo Braga, 115 Lna Central 706<br>CEP:  20020-903<br>Centro -Rio de Janeiro – RJ<br>Brazil |

## Parties to Litigation Pending in the United States

3.       Other than the chapter 15 proceedings of Oi S.A., Telemar Norte Leste S.A., Coop and Oi  Móvel S.A., jointly administered before this Court under Case No. 16-11791, there is no litigation pending in the United States in which Coop is a party as of the date hereof.

## Entities Against Whom Provisional Relief is Being Sought

4.       There are no entities against whom provisional relief is being sought under section 1519 of the Bankruptcy Code at this time.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
In re:                                              :
                                                    :   Chapter 15
Oi Brasil Holdings Coöperatief U.A.,                :
                                                    :   Case No. [_____] (SHL)
        Debtor in a Foreign Proceeding.             :
                                                    :
------------------------------------------------------------x

## DECLARATION REGARDING THE CORPORATE OWNERSHIP STATEMENT AND RELATED DISCLOSURES PURSUANT TO FED. R. BANKR. P. 1007(A)(4) AND 7007.1

I, Jasper R. Berkenbosch, solely in my capacity as the duly appointed trustee (*curator*) (the "Insolvency Trustee") of Oi Brasil Holdings Coöperatief U.A. ("Coop"), declare under penalty of perjury under the laws of the United States of America, that I have reviewed the foregoing *Corporate Ownership Statement and Related Disclosures Pursuant to Fed. R. Bankr. P. 1007(a)(4) and 7007.1*, and that it is true and correct to the best of my knowledge, information and belief.[1]

Dated:       July 7 , 2017

                                        _____
                                        Jasper R. Berkenbosch
                                        Solely in my capacity as the Insolvency
                                        Trustee and Foreign Representative
                                        of Coop

---
[1]      *Penalty for making a false statement or concealing property:* Fine of up to $500,000 or imprisonment for up to 5 years or both. 18 U.S.C. §§ 152 and 3571.