**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 15 |
| OI BRASIL HOLDINGS COÖPERATIEF U.A., | Case No. 17-11888 (SHL) |
| Debtor in a Foreign Proceeding. | |

------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 15 |
| OI BRASIL HOLDINGS COÖPERATIEF U.A., | Case No. 16-11794 (SHL) |
| Debtor in a Foreign Proceeding. | |

------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 15 |
| OI S.A., *et al.*, | Case No. 16-11791 (SHL) |
| Debtors in a Foreign Proceeding. | (Jointly Administered) |

------------------------------------------------------------x

**MEMORANDUM DECISION AND ORDER
DENYING MOTION FOR RECONSIDERATION**

**A P P E A R A N C E S :**

**KRAMER LEVIN NAFTALIS & FRANKEL LLP**
*Counsel for Aurelius Capital Management, LP*
1177 Avenue of the Americas
New York, New York 10036
By:   Kenneth H. Eckstein, Esq.
       P. Bradley O'Neill, Esq.
       David E. Blabey, Jr., Esq.
       Andrew Dove, Esq.

**SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the motion of Aurelius Capital Management, LP ("Aurelius," or the

"Movant") for "rehearing, reconsideration, modification and/or vacatur" ("the Motion") [ECF

No. 140][1] of a portion of the Court's memorandum decision issued on December 4, 2017 and the related order entered on December 26, 2017 (together, the "Decision"). That Decision denied the petition for Chapter 15 recognition of the Dutch insolvency proceedings of Oi Brasil Holdings Coöperatief U.A. ("Coop")—filed by Jasper Berkenbosch in his capacity as Coop's Dutch Insolvency Trustee (the "Insolvency Trustee")—and denied the Insolvency Trustee's related request to modify the Court's earlier recognition order of Coop's Brazilian insolvency proceeding (the "Prior Recognition Order"). For reasons set forth below, the Motion is denied.

## BACKGROUND

The Court's Decision was extensive. *See In re Oi Brasil Holdings Coöperatief U.A.*, 578 B.R. 169 (Bankr. S.D.N.Y. 2017). While familiarity with the Decision is assumed, some brief background is helpful before considering the merits of the Motion.

At its core, the Dutch Insolvency Trustee filed this case to overturn the Court's Prior Recognition Order in the summer of 2016 that found the center of main interests (or "COMI") of Coop was in the Brazil. That prior determination was based upon Coop's role as a special purpose financing vehicle for the "Oi Group," a Brazilian group of companies in the telecommunications business. *Id.* at 176 (describing the Oi Group); *id.* at 183–84 (explaining that Coop is a Dutch special purpose vehicle with no ability to generate a cash return on proceeds and that any proceeds must be on-lent to an operating Oi Group entity capable of generating a profit). Based on a determination that COMI for Coop and other Oi Group debtors was in Brazil, the Court recognized the restructuring in Brazil as a foreign main proceeding for Coop and those other debtors under Chapter 15 of the Bankruptcy Code. *See* 11 U.S.C. § 1517 (setting forth requirements for granting recognition of a foreign proceeding).

---

[1]    All ECF docket numbers refer to Case Number 17-11888 unless otherwise indicated.

In this case—filed in 2017—the Dutch Insolvency Trustee sought to reverse the Brazilian recognition, claiming that Coop's COMI had always been in the Netherlands or, in the alternative, that Coop's COMI had shifted from Brazil to the Netherlands by virtue of the actions of the Insolvency Trustee. The Insolvency Trustee's petition was supported by the so-called International Bondholder Committee (the "IBC" and, together with the Insolvency Trustee, the "Petitioners"), a group of creditors that included Aurelius; the Petitioners were opposed by the debtors who had previously obtained recognition of the Brazilian restructuring proceeding and another group of Oi Group creditors called the Steering Committee (the "Objectors"). *See In re Oi Brasil Holdings Coöperatief U.A.*, 578 B.R. at 175.

In the Decision, the Court rejected the position of the Petitioners. After first discussing the applicable legal standard (*id.* at 193–216), the Court concluded that Coop's COMI was properly determined in the first instance (*id.* at 216–21). The Court further concluded that Petitioners had not satisfied the requirements under 11 U.S.C. § 1517(d) for modifying or terminating the prior recognition of the Brazilian restructuring proceeding given the nature of Coop as a special purpose financing vehicle for the Oi Group, creditor expectations regarding Coop, and the limits on the Insolvency Trustee's power to meaningfully reorganize Coop. *Id.* at 221–35. In addition to these reasons, the Court also found another basis to deny the Petitioners' request to modify or reject the Prior Recognition Order: Aurelius' strategy to block the Brazilian restructuring proceeding. *Id.* at 235–44. The Court's discussion of Aurelius examined its intentions and actions from at least the time of the prior recognition up through the trial in September of 2017. *Id.* Among other things, the Court found that Aurelius' blocking strategy was inconsistent with the principles of Chapter 15, and that Aurelius demonstrated a lack of candor during the hearing on Brazilian recognition in 2016. *Id.*

3

Aurelius does not seek reconsideration of the Decision's holding as to Coop's COMI. Rather, Aurelius requests that the discussion in the Decision about its own conduct be removed. Specifically, Aurelius requests the Court modify or vacate Section F(3) of the Decision and certain other related passages. *Id.* at 235 (Section F(3), entitled "The Plan of Aurelius"). Aurelius offers two reasons for the requested relief. First, it argues that the Court misconstrued the trial record and evidence. Second, it offers new evidence in the form of the declaration of Aurelius' chairman and chief investment officer, Mark Brodsky (the "Brodsky Declaration").

## DISCUSSION

A. Applicable Standards

Aurelius seeks relief under Rules 59 and 60 of the Federal Rules of Civil Procedure (Motion ¶¶ 31–38), which are made applicable to this adversary proceeding by Rules 9023 and 9024 of the Federal Rules of Bankruptcy Procedure, respectively. The Movant specifically cites Rules 59(a), 59(e), and 60(b)(6), arguing that the latter two justify re-visiting the trial record and modifying the Decision's factual findings, and that the former allows the Court to accept and consider the Brodsky Declaration. Motion ¶¶ 31–38.

Rule 59(e) of the Federal Rules of Civil Procedure authorizes the filing of a "motion to alter or amend a judgment." Fed. R. Civ. P. 59(e). The standard for granting a motion to alter or amend a judgment under Federal Rule 59(e) is "strict, and reconsideration will generally be denied . . . ." *Analytical Surveys, Inc. v. Tonga Partners, L.P.,* 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995)). "A motion to amend the judgment will be granted only if the movant presents matters or controlling decisions which the court overlooked that might have materially influenced its earlier decision." *In Design v. Lauren Knitwear Corp.*, 1992 WL 42911, at *1 (S.D.N.Y. Feb. 24, 1992) (citing *Morser v. AT &*

4

*T Information Systems,* 715 F. Supp. 516, 517 (S.D.N.Y. 1989); *Travelers Insurance Co. v. Buffalo Reinsurance Co.,* 739 F. Supp. 209, 211 (S.D.N.Y. 1990)).

Such a request for relief "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Tonga Partners,* 684 F.3d at 52 (quoting *Sequa Corp. v. GBJ Corp.,* 156 F.3d 136, 144 (2d Cir. 1998)). Nor is it "an opportunity for a party to 'plug[ ] the gaps of a lost motion with additional matters.'" *Cruz v. Barnhart*, 2006 WL 547681, at *1 (S.D.N.Y. Mar. 7, 2006) (quoting *Carolco Pictures Inc. v. Sirota,* 700 F. Supp. 169, 170 (S.D.N.Y. 1988)). "Arguments raised for the first time on a motion for reconsideration are therefore untimely." *Cruz*, 2006 WL 547681, at *1 (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Stroh Cos., Inc.,* 265 F.3d 97, 115–16 (2d Cir. 2001)). "[I]t is improper for the movant to present new material 'because[,] by definition[,] material that has not been previously presented cannot have been previously "overlooked" by the court.'" *In Design*, 1992 WL 42911, at *1 (quoting *Consolidated Gold Fields, PLC v. Anglo Am. Corp. of South Africa Ltd.,* 713 F.Supp. 1457, 1476 (S.D.N.Y. 1989)). Reconsideration is "an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Health Management Sys. Inc. Sec. Litig.,* 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (quoting *Wendy's Int'l, Inc. v. Nu–Cape Construction, Inc.,* 169 F.R.D. 680, 685 (M.D. Fla. 1996)). The burden rests with the movant. *See In re Crozier Bros., Inc.*, 60 B.R. 683, 688 (Bankr. S.D.N.Y. 1986).

Rule 60(b) of the Federal Rules of Civil Procedure lists six grounds upon which a court may relieve a party from a final judgment. Fed. R. Civ. P. 60(b). Rule 60(b)(6) grants authority to do so for "any other reason that justifies relief" (Fed. R. Civ. P. 60(b)), and only applies "when the asserted grounds for relief are not recognized in clauses (1)-(5) of the Rule" and

5

"there are extraordinary circumstances justifying relief." *Tapper v. Hearn*, 833 F.3d 166, 172 (2d Cir. 2016) (quoting *Nemaizer v. Baker*, 793 F.2d 58, 63 (2d Cir. 1986)). "As (b)(6) applies only when no other subsection is available, grounds for relief may not be mistake, inadvertence, surprise or excusable neglect." *Nemaizer*, 793 F.2d at 63.

The Second Circuit has held that Rule 60(b)(6) "confers broad discretion on the trial court to grant relief when appropriate to accomplish justice [and] it constitutes a grand reservoir of equitable power to do justice in a particular case." *Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 55 (2d Cir. 2004) (quoting *Matarese v. LeFevre,* 801 F.2d 98, 106 (2d Cir.1986), *cert. denied,* 480 U.S. 908 (1987)). But the rule is only "properly invoked where there are extraordinary circumstances, or where the judgment may work an extreme and undue hardship." *Id.* at 56 (quoting *Matarese,* 801 F.2d at 106). "[A]n error in legal interpretation does not constitute 'extraordinary circumstances.'" *In re Enron Corp.*, 352 B.R. 363, 369 (Bankr. S.D.N.Y. 2006). "'[A] motion for relief from judgment is generally not favored and is properly granted only upon a showing of exceptional circumstances.'" *In re Enron*, 352 B.R. at 369 (quoting *US v. Int'l Bhd. Of Teamsters,* 247 F.3d 370, 391 (2d Cir.2001)). "Properly applied Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgments." *In re Enron Corp.*, 2003 WL 1562202, at *12 (Bankr. S.D.N.Y. Mar. 21, 2003) (quoting *Nemaizer,* 793 F.2d at 61)). Rule 60(b)(6) is not ... a substitute for an appeal from an erroneous judgment." *In re Enron*, 352 B.R. at 369 (quoting *In re Teligent, Inc.,* 306 B.R. 752, 761 (Bankr. S.D.N.Y. 2004)) (omission in the original).

Rule 59(a)(1)(B) of the Federal Rules of Civil Procedure provides that a new trial may be granted "on all or some of the issues . . . after a nonjury trial for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court." Fed. R. Civ. P. 59. Rule

6

59(a)(2) also provides that "[a]fter a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment." *Id.* Rule 59(a)(2) motions may only be granted if:

> (1) the court has made a manifest error of law, (2) the court has made a manifest error of fact, or (3) there exists newly discovered evidence. If the motion is based on newly discovered evidence, the evidence must have been unknown to the movant at the time of trial, and the movant must have been excusably ignorant of the facts-meaning that the facts could not have been discovered by a diligent search.

*Sorenson v. Wolfson*, 2015 WL 4095197, at *3 (S.D.N.Y. July 7, 2015) (quoting *In Design*, 1992 WL 42911, at *1); *see also In re Cross Media Mktg. Corp.*, 2006 WL 2337177, at *8 (S.D.N.Y. Aug. 11, 2006). "'A new trial may be ordered to prevent a grave miscarriage of justice even though the newly discovered evidence supporting that order would have been available to the moving party at trial had that party exercised proper diligence,'" but "only [in] cases in which the evidence is 'practically conclusive.'" *In re Cross Media Mktg. Corp.*, 2006 WL 2337177, at *8 (quoting *Ope Shipping, Ltd. v. Underwriters at Lloyds,* 100 F.R.D. 428, 432 (S.D.N.Y. 1983)).

    B. <u>Reconsideration of the Trial Record</u>

Before turning to Aurelius' specific arguments, the Court addresses an underlying theme in the Motion. In arguing for relief, Aurelius maintains that the Decision's discussion about Aurelius' alleged lack of candor was "something of a surprise." Motion ¶ 57. Underpinning that notion appears to be the idea that Aurelius' conduct had not been the subject of much discussion during this proceeding. But that is not the case here as the issue of Aurelius' conduct was squarely placed before the Court both before and during the trial.

First, the Objectors explicitly framed their allegations against Aurelius and the IBC in terms of an overarching investment strategy starting from at least the date of the Brazilian

7

recognition hearing in the prior Chapter 15 case. *See, e.g., Steering Committee's Objection to The Trustee's Verified Petition and Motion* ("SC Objection") ¶ 1 [ECF No. 55] ("[W]hile Oi, Coop and their affiliates have pressed forward with their group-wide restructuring in Brazil . . . . [a] group of noteholders led by Aurelius has forced Coop into liquidation proceedings in the Netherlands and caused the appointment of a trustee . . . ."); *id.* ¶ 2 ("The Trustee's enactment of Aurelius' investment strategy has already caused harm to creditors and the restructuring process. . . . [F]ragmenting this Court's Recognition Order for Coop . . . . can serve only to lay the groundwork for the Trustee and Aurelius to create hold-up value . . . ."); *id.* ¶ 4 ("Since the entry of the Recognition Order, Aurelius has alternately pressured and wheedled the Trustee into taking steps to push Coop into bankruptcy in the Netherlands, all with the goal of gaining a bargaining chip in Coop's ongoing Brazilian restructuring."); Discovery Hr'g Tr. 79:18–80:2 [ECF No. 138] (seeking discovery of Aurelius' communications starting on July 20, 2016 (the day before the Prior Recognition Hearing, and two days before entry of the Prior Recognition Order) to track communications with recipients of an investment memo that Aurelius distributed to other potential Coop creditors on July 22, 2016). In its objection to the Chapter 15 petition filed by the Insolvency Trustee, the Steering Committee contended that Aurelius' purchase of 99% of its Coop note holdings after the Prior Recognition Hearing could

> mean one of only two things: (i) Aurelius expected the Oi Group's Brazilian operations to deliver favorable returns through the Brazilian RJ Proceeding or (ii) ***Aurelius acquiesced to entry of the Recognition Order (and ensured it would not interfere with its activities in Holland), intending all along to hold these proceedings hostage with its litigation strategy.***

SC Objection ¶ 57 (emphasis added). The parties also raised Aurelius' "maneuvering" in past cases as a point of comparison. *See id.* ¶ 4 ("This type of bad faith maneuvering is not new for

8

Aurelius. This Court should not reward its bad faith."); *id.* at 4 n. 9 (citing *In re OAS S.A.*, Case No. 15-11304 (Bankr. S.D.N.Y. 2015), August 18, 2015 Hr'g Tr. 64:18–23).

Second, the parties repeatedly pointed the Court to Aurelius' participation in the prior recognition hearing, its request for specific language carving out its actions abroad from the automatic stay, and its decision to refrain from objecting to recognition of the Brazilian proceeding. *See, e.g., id.* ¶ 24 (summarizing details regarding Aurelius' request for a stipulation that the automatic stay would only apply to actions within the United States, Aurelius' appearance through counsel at the prior recognition hearing, and Aurelius' holdings of only $800,000 of Coop notes at the time); *id.* ¶ 25 (observing that Aurelius did not object to the Brazilian COMI finding or any other part of the prior recognition order, but subsequently "dramatically increased its position in Coop Notes, with full knowledge of the implication of the Recognition Order's finding that Coop's COMI was in Brazil"); Trial Tr. 118:22–119:2, Sept. 18, 2017 (Cunningham) *Notice of Filing of Evidentiary Hearing Transcripts* [ECF No. 124] (presenting Oi's opening argument at trial and stating that "after laying in the weeds for a year, also along comes Aurelius and other IBC noteholders who deliberately sat out and offered no evidence or objection at the prior recognition hearing.").

Third, as Aurelius acknowledges (Motion ¶ 57), parties raised allegations in the days leading up to the trial of COMI manipulation and bad faith based on Aurelius' conduct. *See, e.g.,* SC Objection ¶ 4 ("[A]mple evidence demonstrates that . . . an Aurelius-led group of bondholders . . . repeatedly acted to manipulate Coop's COMI as part of a broader strategy to maximize [their] recoveries, to the detriment of the Oi Group's other creditors."); Letter Filed by Luke Barefoot at 2 [ECF No. 39] (requesting discovery of "creditor recoveries, recovery scenarios and alternative plans" as "relevant to whether Coop's [COMI] ha[d] been manipulated"

9

and "the question of motivation, bad faith and whether the movant and/or the International Bondholder Committee sought to shift COMI simply for the purpose of disruption and nuisance value"); Status Conference Tr. 29:24–30:12 [ECF No. 51] (presenting Oi's view that if Coop's COMI had shifted it was the result of "manipulation done by creditors, including Aurelius, . . . specifically for the purpose to derail the potential for a restructuring in Brazil."); Discovery Hr'g Tr. 60:15–61:25 (Oi arguing for discovery of communication between Aurelius and the Insolvency Trustee regarding the purpose of the debtor-in-possession financing and any possible agreements to use the funds to litigate and "derail th[e] global restructuring . . . and use that leverage to increase the value of [Aurelius'] bonds"). Indeed, counsel for the IBC expressly acknowledged that Aurelius' conduct had been a focus. *See* Discovery Hr'g Tr. 91:23–92:8 ("[T]here's been a lot of discussion in the objector's papers regarding COMI manipulation . . . . And as part and parcel of that argument, there's been an attack, a very unfair attack and certainly misguided attack, against one of the members of the IBC Aurelius.").

Given all the discussion of Aurelius' conduct, it was not surprising to the Court that the topic became a significant issue at trial, so much so that a witness from Aurelius testified at trial. *See* Trial Tr. 573:7–663:2, Sept. 25, 2017 (Gropper). Based on a robust evidentiary record on the issue, the Court ultimately concluded that Aurelius had a strategy to collaterally attack the Brazilian restructuring proceedings, a strategy that at the very least had been contemplated around the time of the hearing on the Prior Recognition Order. This strategy—and its execution—was demonstrated by extensive evidence, including but not limited to:

- The existence of Aurelius' double dip strategy for increasing recovery (*see In re Oi Brasil Holdings Coöperatief U.A.*, 578 B.R. at 235);

- Aurelius sharing its double dip strategy with other creditors on the same day as the prior recognition hearing, while not objecting to recognition of Coop's Brazilian proceeding (*see id.* at 235);

10

- Aurelius' recognition that its double dip strategy would be jeopardized if the proposed plan in the Brazilian restructuring went forward, thus providing a clear incentive for seeking to block the Brazilian proceeding (*see id*. at 235);

- Aurelius dramatically increasing its position in Coop Notes following the prior recognition hearing, betting on its ability to recovery under a double dip strategy (*see id*. at 237);

- Aurelius' pressure on Mr. Berkenbosch to convert the Dutch proceeding into a bankruptcy, and the IBC's subsequent support and financing of Mr. Berkenbosch's U.S. petition (*see id*. at 237–8, n. 56); and

- the Insolvency Trustee's intent to block the Brazilian insolvency proceeding consistent with Aurelius' strategy (*see id*. at 238–39).

Given all this evidence of Aurelius' strategy, the only question was how to view it for purposes of Chapter 15. *See In re Oi Brasil Holdings Coöperatief U.A.*, 578 B.R. at 239 ("Having found that Aurelius engaged in such a strategy, the question then becomes the legal significance of its actions."). While the Court was reluctant to delve into Aurelius' conduct absent good reason, the Court ultimately determined it was necessary and appropriate to address the conduct as relevant to the Chapter 15 issues presented to the Court. *Id.* at 240–42 (*citing In re Fairfield Sentry*, 714 F.3d 127, 138 (2d Cir. 2013) (noting that "[t]he absence of a statutory definition for a term [like COMI] that is not self-defining signifies that the text is open-ended, and invites development by courts, depending on facts presented, without prescription or limitation."); *see also id.* at 242-44 (explaining that actions of Aurelius were inconsistent with trend in international insolvency law).[2]

---

[2] Movant incorrectly reads the Decision to include findings that "Aurelius had engaged in 'COMI manipulation'" (Motion ¶ 24) or "bad faith COMI manipulation" (Motion ¶ 40), and specifically contends that those findings should be stricken (Motion ¶¶ 62–63). In fact, the Court did not make any findings that Aurelius demonstrated bad faith, or manipulated COMI. While recognizing that a creditor like Aurelius does not have the same fiduciary obligations as a debtor or control over certain facts relevant to COMI (*see In re Oi Brasil Holdings Coöperatief U.A.*, 578 B.R. at 240), the Court nonetheless found Aurelius' strategy to be appropriate for consideration when deciding whether or not to exercise the Court's discretion to grant relief under Section 1517(d) (*see id.* at 241–42).

11

Notwithstanding this extensive record concerning Aurelius' conduct, the Motion itself focuses only on a few specific pieces of evidence in the trial record. First and foremost, it contends that the Court misinterpreted Mr. Gropper's affirmative statement that "[i]t was always [Aurelius'] understanding and expectation that Coop would be reorganized in the Netherlands pursuant to the laws of the Netherlands." Trial Tr. 636:19–637:25, Sept. 25, 2017 (Gropper). Second, Movant states that neither the investment memo issued to other investors by Aurelius on July 22, 2016, nor the letters between Aurelius and the Insolvency Trustee, referenced a strategy to pursue a second Chapter 15 case for the Dutch proceedings. Third, Movant reports that the Jones's Day memo to the Insolvency Trustee, which explicitly contemplated filings in the U.S. to block a Brazilian restructuring, was not "prepared by, or even for, Aurelius, nor did Aurelius see the memo prior to these proceedings." Motion ¶ 50. Finally, Aurelius argues that the evidence demonstrates that its primary goal in seeking an independent fiduciary in the form of the Insolvency Trustee was to have representation in the Brazilian proceedings and to initiate Dutch pauliana proceedings in the Netherlands. By highlighting these specific items, Movant argues that, individually, no one piece of evidence provides a sufficient basis to reach the conclusions about Aurelius that are contained in the Decision.

But in focusing on these specific bits of evidence, the Motion obscures the big picture. As is clear from the discussion above and the Court's Decision, the Court reached its conclusion about Aurelius' conduct based on a totality of the evidence. *See In re Oi Brasil Holdings Coöperatief U.A.*, 578 B.R. at 235 ("The evidence establishes . . . ."); *id.* 237–38 (compiling evidence regarding Aurelius' actions "consistent" with the identified investment strategy). Accordingly, the Court declines Movant's attempt to rewrite or alter its finding as to Aurelius—findings made on an exhaustive review of a fulsome and heavily contested record—based on

Aurelius' cherry picked evidence. "A motion to amend the judgment will be granted only if the movant presents matters or controlling decisions which the court overlooked that might have materially influenced its earlier decision." *In Design*, 1992 WL 42911, at *1 (citing *Morser,* 715 F.Supp. at 517) (explaining standard for application of Rule 59(e)); *Travelers Insurance Co.,* 739 F.Supp. at 211 (same)). The Movant here does not present new law, or point to matters the Court overlooked. Rather, Aurelius simply argues that in considering certain of the evidence before it, the Court got it wrong.

Moreover, Aurelius' reliance on specific pieces of evidence conveniently overlooks other evidence on the same topics. For example, it is true that Mr. Gropper's testimony did not specifically express an opinion on COMI or an intention to file a Chapter 15. But he did express the opinion that Coop's restructuring would take place in the Netherlands, a view he held even at the time of the prior recognition hearing that recognized Coop's Brazilian restructuring proceeding. Trial Tr. 636:19–637:25, Sept. 25, 2017 (Gropper). The Court understood that testimony against the backdrop of Coop's assets being located, for all practical purposes, in Brazil and thus beyond the reach of the Insolvency Trustee. *See In re Oi Brasil Holdings Coöperatief U.A.*, 578 B.R. at 233, 234, and 235 n. 51. It is hard to imagine how Aurelius would think that the restructuring of Coop—including payment of its bondholders like Aurelius—could be effectively accomplished in the Netherlands under these circumstances, absent an action to block the Brazilian restructuring proceeding. The meaning of this testimony was also gleaned from Mr. Gropper's testimony that, early in his conversations with the Insolvency Trustee, they had actually "discussed [that] he would commence some proceeding" in the U.S., either a Chapter 15 or a Chapter 11. Trial Tr. 617:5–9, Sept. 25, 2017 (Gropper).

13

Similarly, Movant's letters to Mr. Berkenbosch in the fall of 2016 did not mention Chapter 15, but it was the immediacy, frequency, and aggressiveness of Aurelius' contact that support the conclusion that the letters were part of a blocking strategy being pursued from the very start. It is similarly myopic for the Movant to rely on the fact that it was the Insolvency Trustee who actually filed the Chapter 15 and pursued the change in COMI; it was Aurelius and the IBC who provided the debtor-in-possession loan to fund the Chapter 15 case and filed the appeals in the Dutch court that were necessary to grant the Insolvency Trustee authority over the Dutch estate. Once again, it was not a single piece of evidence, but rather a pattern of behavior that began at least as early as the distribution of Aurelius' investment memo on the very same day as the Brazilian recognition hearing which led to the Court's conclusions regarding Aurelius' investment strategy.[3]

Given the totality of the record, therefore, the Court concludes that Movant has not satisfied its burden for relief. Simply attempting to pick at and re-characterize individual pieces of evidence is not enough to meet the strict standard set by Rule 59(e) or justify exercising an "extraordinary remedy" which is to "be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Health Management Sys. Inc. Sec. Litig.,* 113 F.

---

[3] Bankruptcy courts are often asked to glean intent or strategy from such a trail of evidentiary breadcrumbs. *C.f. In re Thanh V. Truong*, 271 B.R. 738, 745–46 (Bankr. D. Conn. 2002) ("Because intent to defraud is rarely proved by direct evidence, a majority of courts have utilized the 'totality of the circumstances' approach . . . to discern a debtor's subjective intent . . ." including consideration of the "time elapsed between the charges and the bankruptcy filing . . . .") (citing *Citibank South Dakota N.A. v. Dougherty (In re Dougherty)*, 84 B.R. 653, 657 (9th Cir. BAP 1988) (*abrogated on other grounds by Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)); *see also In re Vanarthos*, 445 B.R. 257, 263 (Bankr. S.D.N.Y. 2011) ("To assist the Court in inferring the debtor's intent, courts have adopted a non-exclusive list of objective or circumstantial factors, including: (1) The length of time between the charges and the filing of bankruptcy . . . .") (quoting *In re Senty*, 42 B.R. 456, 460 (Bankr. S.D.N.Y. 1984)); *In re Lapic*, 2009 WL 2413262, at *4 (Bankr. D. Conn. Aug. 4, 2009) (detailing same "totality of the circumstances" approach, including consideration of "time elapsed") (quoting *Truong*, 271 B.R. at 745–46); *In re Spring*, 2005 WL 588776, at *5 (Bankr. D. Conn. Mar. 7, 2005) ("The short time lapse between the purchasing spree and consultation for legal representation in bankruptcy supports the inference that the Debtor did not intend to pay for her purchases in accordance with the Agreement.").

14

Supp. 2d at 614 (quoting *Wendy's Int'l,* 169 F.R.D. at 685).  Accordingly, the Court rejects Aurelius' argument that Section F(3) of the Decision should be struck under Rule 59 for lack of evidence.  Motion ¶ 39.

For similar reasons, the Court declines Movant's request to vacate any portion of its decision under Rule 60(b)(6).  "Rule 60(b)(6) is not ... a substitute for an appeal from an erroneous judgment." *In re Enron*, 352 B.R. at 369 (quoting *In re Teligent, Inc.,* 306 B.R. at 761) (omission in the original).  If Aurelius believes the Court misinterpreted the evidence, the appropriate procedure is to appeal the Decision.  Further, contrary to Movant's claim, the facts here do not otherwise constitute the requisite "extraordinary circumstances" which would justify a Rule 60(b) order.  *Tapper*, 833 F.3d at 172 (quoting *Nemaizer*, 793 F.2d at 63).  To support its position, Aurelius offers to "forego its right to appeal the Chapter 15 Decision if the Court grants the requested relief."  Motion ¶ 65 (explaining the preservation of judicial resources to be gained, its concerns over reputational harm, and its good faith participation in the Brazilian proceedings).  But the prospect of an appeal is irrelevant in determining whether to grant the requested relief and, in any event, parties have already filed appeals of the Decision, thus belying the likelihood of any judicial economy.  Of course, the Court welcomes news of Aurelius' good faith participation abroad, as such an outcome is a goal of international insolvency law.  *See In re Oi Brasil Holdings Coöperatief U.A.*, 578 B.R. at 116–17.

    C. <u>Evaluation of New Evidence</u>

The Court next considers Movant's request to accept new evidence in the form of the Brodsky Declaration.  Aurelius relies on Federal Rule of Civil Procedure 59(a)(2) to justify consideration of the declaration, arguing that sufficient evidence to support the Court's findings regarding Aurelius' behavior was previously lacking, and that ignoring the Brodsky Declaration

15

would be manifestly unjust. Movant also cites case law for the proposition that granting a new trial is appropriate given its view that the finding of Aurelius' lack of candor was "a surprise." Motion ¶ 57 (citing *Sequa Corp.*, 156 F.3d at 144).

But the Brodsky Declaration does not meet the standard under Rule 59(a)(2). Rule 59(a)(2) motions may only be granted if:

> (1) the court has made a manifest error of law, (2) the court has made a manifest error of fact, or (3) there exists newly discovered evidence. If the motion is based on newly discovered evidence, the evidence must have been unknown to the movant at the time of trial, and the movant must have been excusably ignorant of the facts-meaning that the facts could not have been discovered by a diligent search.

*Sorenson*, 2015 WL 4095197, at *3 (quoting *In Design*, 1992 WL 42911, at *1 (internal citation omitted)); *see also In re Cross Media*, 2006 WL 2337177, at *8.

As discussed extensively above, however, the Court concludes that the issue of Aurelius' conduct was squarely raised before the Court and that there was sufficient evidence to support its findings regarding that conduct. Moreover, the Brodsky Declaration does not qualify as newly discovered evidence, as its primary topic is what Aurelius and its representatives knew and believed at various points in time during the earlier proceedings.[4] Finally, Aurelius has not demonstrated that the Court's findings about Aurelius are a "grave miscarriage of justice." *In re Cross Media*, 2006 WL 2337177, at *8 (quoting *Ope Shipping,* 100 F.R.D. at 432).

---

[4] Given the Motion's emphasis on the Court's alleged misinterpretation of Mr. Gropper's testimony, the Court questions why Aurelius would offer a declaration from a witness who did not appear at trial rather than one from Mr. Gropper himself. This is especially odd given that Mr. Brodsky states that Mr. Gropper was involved on the investment team at Aurelius starting in late June 2016, before the prior recognition hearing.

16

## **CONCLUSION**

For the reasons stated above, the Court denies the Motion.

IT IS SO ORDERED.

Dated: New York, New York
       March 14, 2018

                                        */s/ Sean H. Lane*
                                        UNITED STATES BANKRUPTCY JUDGE